UNITED STATES of America, Plaintiff,

v.

R. Bruce DUNCAN, Defendant.

No. 87 C 7894.

United States District Court,
N.D. Illinois, E.D.

Jan. 5, 1989.

Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff.

Daniel T. Hartnett, Silets and Martin, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

The United States of America (the "government") brought this case pursuant to 26 U.S.C. §§ 7402(b) and 7604(a) to obtain judicial enforcement of an Internal Revenue Service ("IRS") summons. The summons, addressed to Duncan personally and d/b/a Chicago Appraisers (a sole proprietorship), was served on January 22, 1987. The summons directed R. Bruce Duncan to appear before IRS Revenue Agent Egan on February 18, 1987, to testify and produce certain books and records, including client information, government forms, correspondence, and other data. Duncan did not appear in response to the summons, but instead submitted a few documents. After the government filed this petition to enforce the summons, Duncan answered by making a blanket assertion of the Fifth Amendment privilege against self-incrimination.

The government moved for summary enforcement of the petition in December of 1987. In that motion the government requested an order requiring Duncan to ap-

pear before the IRS and respond individually to each question asked and each document sought. On July 6, 1988, Duncan appeared before the IRS. He stated, through counsel, that he and the government had "agreed that it would be appropriate for [him] to come in and sit and be asked certain questions and be asked to respond to the questions." Transcript of July 6, 1988 deposition ("Tr.") at 3. Duncan brought a box containing certain documents to the deposition, but stated (again, through counsel) that he would not identify those documents in order to preserve his right not to incriminate himself under the "Act of Production Doctrine." [1] Tr. at 4. Duncan's counsel also stated that if the Court entered an order enforcing the summons, "Mr. Duncan will turn over the records that are contained within the box that he has brought with him here today as well as other records which are too voluminous for him to have brought down here which are maintained at his business offices in Northbrook." *Id.*

The IRS District Counsel then asked Duncan a number of questions. Duncan answered only the first two questions, stating his name and address. He refused to answer the remaining questions "on the grounds that my answer may tend to incriminate me in violation of my privilege under the Fifth Amendment of the Constitution of the United States." Tr. at 5. Duncan refused to answer questions about his age, marital status, educational background, occupation, and the data requested in the IRS summons. At the end of the deposition, the IRS District Counsel specifically asked Duncan why he was claiming the Fifth Amendment with respect to the questions that were asked. Tr. at 10. Duncan's counsel responded:

No, I don't think we will explain why we are going to impose the 5th. I mean that would be waiving the privilege in order to assert the privilege.

. . . .

I want to make it clear the reason that we have declined to produce the documents is based on the Act of Production Doctrine as set forth in the Doe case. Tr. at 10–11.

Pending before the Court is the government's motion to enforce the summons.[2] The government contends that Duncan failed to provide any support for his assertion of his Fifth Amendment privilege against self-incrimination. Duncan argues that he has sufficiently set forth the possibility of injurious disclosure as to both the testimony and the documents sought by the summons and therefore his Fifth Amendment claim is valid.

## II. DISCUSSION

■ The summons in question seeks the business records of an individual doing business as a sole proprietorship.[3] The Supreme Court has held that the contents of subpoenaed business records are not privileged. *Braswell v. United States,* 487 U.S. ——, 108 S.Ct. 2284, 2287, 101 L.Ed.2d 98 (1988); *United States v. Doe,* 465 U.S. 605, 613, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984). However, the act of producing the documents may be privileged under the Fifth Amendment. *Doe, supra,* at 613, 104 S.Ct. at 1242. The Fifth Amendment is implicated in a claim of privilege relating to the production of business records only when an individual "is compelled to make a testimonial communication that is incriminating." *Fisher v. United States,* 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976). In other words, in order to claim the privilege, the subpoenaed party must demonstrate that the act of producing the requested records would have both an in-

---

**1.** "Although the contents of a document may not be privileged, the act of producing the document may be." *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984).

**2.** The government's motion for summary enforcement appears to be moot because, as discussed above, Duncan appeared for the July 6, 1988, deposition.

**3.** Although the Fifth Amendment does not protect the records of corporations, individuals or sole proprietorships can invoke the privilege. *See Braswell v. United States,* 487 U.S. ——, 108 S.Ct. 2284, 2287, 101 L.Ed.2d 98 (1988); *Bellis v. United States,* 417 U.S. 85, 87–88, 94 S.Ct. 2179, 2182–83, 40 L.Ed.2d 678 (1974).

criminating effect and a testimonial aspect.[4] In *Fisher* the Court noted that "[t]hese questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof." 96 S.Ct. at 1581.

■ The Court must determine whether Duncan's refusal to produce the documents is justified. The validity of the assertion does not hinge on Duncan's mere assertion that the act of production would have an incriminatory effect. *See National Acceptance Co. of America v. Bathalter*, 705 F.2d 924, 927 (7th Cir.1983)). Nor must Duncan prove that he is faced with the actual possibility of prosecution. Rather, the Seventh Circuit has held that "[w]hen a witness can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster." *In Re Folding Carton Antitrust Litigation*, 609 F.2d 867, 871 (1979).

The purpose of the IRS investigation in this case is "to determine the federal tax liability of R. Bruce Duncan for penalties under Sections 6700, 6701, 6707 and 6708 of the Internal Revenue Code of 1954, 26 U.S.C. as amended (the "Code"), and to determine the appropriateness of a request for injunctive relief under Section 7408 of the Code." Declaration of Edward Egan at 1. According to Duncan, sections 6700, 6701, 6707, and 6708 "closely parallel criminal provisions of the code such as Section 7206(2)." Duncan has provided no other reason for his fear of prosecution. No Grand Jury investigation or other ongoing criminal investigation has been brought to the Court's attention. As the government correctly argues, if the mere nature of the civil Code sections in question were sufficient to establish a "fanciful possibility of prosecution," no summons under these sections could ever be enforced. Duncan contends, however, that by disclosing any further information about why production of the documents would be incriminating, he would in essence be disclosing that which the Fifth Amendment was designed to protect.

The Court agrees with the government that at this point Duncan has not even produced evidence of a fanciful fear of prosecution. However, the Supreme Court has recently stated that if the subpoenaed individual conducts his business as a sole proprietorship, he should be provided "the opportunity to show that his act of production would entail testimonial self-incrimination." *Braswell, supra*, 108 S.Ct. at 2288. The issue to be resolved is in what form the opportunity should be provided.

■ Duncan suggests that the Court conduct an *in camera, ex parte* hearing to determine the appropriateness of his assertion of privilege. In that hearing he would seek to clarify his basis for claiming the Fifth Amendment privilege. The court utilized an *in camera* inspection in *United States v. Kretz Equip. Co.*, 56 AFTR 2d ¶ 85–5047 (N.D.Indiana 1985) [1985 WL 1489] (Kanne, J.), a case cited by the government.[5] That case involved the refusal, based on the Fifth Amendment privilege, to produce certain documents in response to both a civil and criminal tax investigation. In *Kretz Equip.*, Judge Kanne ruled that the respondents should turn over to the court all of the records for which the privilege was claimed along with a "written statement justifying the Fifth Amendment claims...." *Id.* at 5135. The Court will utilize a similar procedure in this case. Duncan shall respond, in writing, to each of the questions that he refused to

---

4. Compliance with the summons may have "communicative aspects of its own, wholly aside from the contents of the papers produced." *Fisher, supra*, 96 S.Ct. at 1581. Compliance with the subpoena may implicitly require the subpoenaed individual to attest to the existence of certain records or his control of them. Compliance could also "indicate the taxpayer's belief that the papers are those described in the subpoena." *Id.* (citation omitted).

In the present case, enforcement of the summons would implicitly require Duncan to admit that the requested records exist, that he has control of them, and that they are authentic. Thus, Duncan's production may well have a testimonial aspect and could possibly violate his Fifth Amendment rights.

5. *See also, infra* at 823.

answer at his deposition and explain how each response is incriminating. This memorandum shall be submitted, *in camera*, directly to chambers, no later than January 27, 1989.

 The government has argued that the Court does not have to determine the validity of Duncan's Fifth Amendment privilege. Specifically, the government contends that Duncan waived his privilege because he brought a box of documents with him when he responded to the summons on July 6, 1988, and stated (through his counsel) that other records were maintained in his office, but that he did not bring them because they were too voluminous. The government argues that by this act and statement Duncan has expressly admitted that the summoned records exist, are in his control, and are authentic. Thus, according to the government's theory, all of the elements of the act of production are already present. In support of this argument the government relies on *Kretz Equipment, supra.* In that case respondents arrived at the office of the petitioner with sealed boxes which purportedly contained the documents that the government summoned. The district court found that by producing the sealed documents, respondents "admitted that the documents existed, that they possessed them, and that the papers were those described in petitioners' summons. Thus, by producing the documents, respondents waived their privilege of self-incrimination as to testimonial conduct indicating the existence and control of the documents." *Id.* at 5137.

In the present case Duncan did not bring all of the requested material with him to the July 6 deposition. He did not specifically identify the documents that were left in his office. Moreover, through his attorney, Duncan carefully explained that although he had brought certain documents with him to the deposition, he would "not identify those documents further in order to preserve our right not to incriminate ourselves under the Act of Production Doctrine." Tr. at 4. He further stated that "the reason that we declined to produce the documents is based on the Act of Produc-

tion Doctrine as set forth in the Doe case." Tr. at 11. It would be fundamentally unfair to find that Duncan had waived his Fifth Amendment rights in the above circumstances. He clearly stated on the record that he had no intention of so doing. Therefore, the Court finds that Duncan did not waive his privilege against self-incrimination by bringing certain documents to the deposition or stating that other documents existed in his office.

## III. CONCLUSION

For the reasons discussed above, the government's motion to enforce the summons is entered and continued generally. Duncan shall respond, in writing, to each of the questions that he refused to answer at the July 6, 1988, deposition and explain how each of those responses is incriminating. This memorandum shall be submitted, *in camera*, to chambers no later than January 27, 1989.