**In re William J. STOECKER, Debtor.**

**Bankruptcy No. 89 B 02873.**

United States Bankruptcy Court, N.D. Illinois, E.D.

July 26, 1989.

Thomas Anthony Durkin, Chicago, Ill., for debtor William J. Stoecker.

Robert Radasevich, Neal, Gerber, Eisenberg & Lurie, Chicago, Ill., for trustee Thomas E. Raleigh.

Thomas E. Raleigh, Raleigh & Helms, Chicago, Ill., Chapter 11 Trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on a motion to compel filed by Thomas E. Raleigh ("Raleigh") as Chapter 11 trustee for the estate of William J. Stoecker ("Stoecker") and on Stoecker's motion to reconsider the Court's Order dated April 27, 1989 (the

"April 27th Order"). For the reasons set forth below, the Court having considered all the pleadings and submissions filed hereby allows the motion to compel and denies the motion to reconsider.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these motions pursuant to 28 U.S.C. § 1334 and General Orders of the United States District Court for the Northern District of Illinois. The motions constitute core proceedings under 28 U.S.C. § 157(b)(2)(A), (E), and (O).

## II. FACTS AND BACKGROUND

On January 31, 1989, involuntary Chapter 7 petitions were filed against five corporate holding companies. Grabill Corporation ("Grabill") is the parent holding company which wholly owns all stock of the four subsidiary holding companies, Camdon Companies, Inc., Foxxford Group, Ltd., The Techna Group, Ltd. and Windsor–Hamilton, Ltd. The five corporate debtors collectively own the stock of approximately twenty-six operating subsidiary corporations not in bankruptcy. The involuntary petitions alleged that approximately 150 million dollars, which were loaned to the corporate debtors in 1988, were missing.

As a result of the undisputed, adverse financial condition of the debtor corporations, the Court ordered the appointment of an interim trustee with limited powers. Jay Steinberg ("Steinberg") was appointed by the United States Trustee on February 2, 1989. Consensual orders for relief were entered on February 3, 1989, and the cases were voluntarily converted to Chapter 11 proceedings to be jointly administered. Steinberg's powers were expanded on February 10, 1989, to full Chapter 11 trustee powers upon consent of Stoecker, who is the sole equity holder in Grabill and the four related corporate debtors.

Subsequently, on February 21, 1989, an involuntary Chapter 11 petition was filed against Stoecker. He did not answer or in any way plead responsive to the involuntary petition. Stoecker was accused of pre-petition fraud and several petitioning credi-

tors moved for the appointment of a Chapter 11 trustee. On March 8, 1989, after a full evidentiary hearing, Stoecker's alleged pre-petition fraud was clearly and convincingly proven. Hence, the Court ordered appointment of a Chapter 11 trustee. On March 14, 1989, an order for relief under Chapter 11 was entered in the case. Thereafter, on March 20, 1989, Raleigh was appointed Chapter 11 trustee.

Pursuant to his duties as trustee, Raleigh demanded that Stoecker turnover all assets of the estate and all books, records and documents relating thereto. Raleigh and his attorneys met with Stoecker and his attorneys on or about April 14, 1989. Although some documents were turned over to Raleigh, many were not surrendered. Moreover, Stoecker refused to answer certain questions propounded invoking the Fifth Amendment to the United States Constitution. On April 18, 1989, in a letter, Stoecker's bankruptcy counsel advised Raleigh's attorneys that on April 17, 1989, they received delivery of several large boxes containing documents relating to the Stoecker case. They further advised they were willing to deliver all nonprivileged original documents to Raleigh as long as copies were returned to them.

On April 20, 1989, Raleigh filed a motion to compel turnover of the documents not previously produced. One day prior thereto, Stoecker was arrested and charged for alleged bankruptcy fraud and has subsequently been indicted. At the April 27, 1989 hearing on Raleigh's motion to compel turnover, Stoecker's criminal defense counsel requested a continuance and asserted a blanket claim of privilege under the Fifth Amendment. Subsequently, the April 27th Order was entered for turnover against Stoecker based on Section 521(4) of the Bankruptcy Code.

Stoecker persisted in his refusal to turnover documents to Raleigh. Thereafter, on May 1, 1989, he filed the instant motion to reconsider the entry of the April 27th Order. On the same day, Raleigh filed the companion motion at bar to compel. Stoecker's motion to reconsider was accompanied by sealed submissions generally de-

scribing the contents of the nine boxes of documents he had previously given his counsel. After the Court reviewed Stoecker's sealed submissions, it was clear that same were patently insufficient to show proper factual and legal bases for blanket assertion of the constitutional or any other privilege claimed.

On May 14, 1989, this Court entered an Order compelling compliance with the April 27th Order and modifying same in certain respects. Stoecker was required to produce *in camera* all documents claimed to be privileged within fourteen days, together with his affidavit showing the specific factual basis for each privilege claimed for each document refused to be produced. Stoecker was further ordered to furnish an inventory of the documents he previously turned over to Raleigh. Raleigh, in turn, was ordered to furnish an inventory of the documents he received from Stoecker by which he asserts Stoecker has effectively waived the privileges claimed. The documents in question include bank statements and records, correspondence, receipts, invoices, ledgers, journals and some allegedly personal papers. The Court has not received any compliance from Stoecker. None of the documents claimed to be privileged have been furnished for *in camera* review. Moreover, Stoecker has failed to furnish any affidavits showing factual bases for the claimed privileges. Raleigh, however, has complied with the May 14, 1989 Order.

### III. ARGUMENTS MADE BY THE PARTIES

Stoecker argues that Section 521(4) of the Bankruptcy Code cannot legislatively nullify a legitimate invocation of his Fifth Amendment privilege. Although Stoecker does not directly challenge section 521(4) as unconstitutional, by way of footnote, he argues it may be unconstitutional as applied under the facts of this case. He asserts that the act of producing the documents is itself both testimonial and incriminating and is therefore protected and cannot be properly ordered under the Fifth Amendment.

Raleigh argues that section 521(4) is constitutional as applied in this case and compels Stoecker to turnover the documents whether or not Stoecker is granted use and derivative use immunity under 11 U.S.C. § 544 and 18 U.S.C. § 6002 *et seq.* Raleigh also claims that the subject documents should be produced because of the implicit admissions in the April 18, 1989 letter. Raleigh argues that the statements therein serve as an admission that the documents exist, were in Stoecker's possession and control and have thereby been authenticated. Moreover, the nature of many of the documents indicate they were prepared by third parties. Therefore, Raleigh concludes that the act of producing such non-privileged documents would not violate the Fifth Amendment. Lastly, Raleigh contends that Stoecker's prior production of many documents serves as an effective waiver of the privilege.

### IV. STANDARDS AND CONTROLLING AUTHORITIES

Section 521(4) of the Bankruptcy Code requires a debtor to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate, *whether or not immunity is granted under section 344 of this title.*" 11 U.S.C. § 521(4) (emphasis added). The legislative history clearly indicates that the intention of Congress was that all material be turned over. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 176 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787. Moreover, the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Publ.L. No. 98–353) added the underlined words so that no question remains but that Congress intended the turnover of such material by the debtor. *In re Walsh Trucking Co.,* 67 B.R. 863, 865 (Bankr.D. N.J.1986)

Under the Fifth Amendment to the United States Constitution, "No person ... shall be compelled in any criminal case to be a witness against himself." The Fifth Amendment privilege against self-incrimination is one of the core concepts of our

adversary judicial system. The privilege shields against the dangers of an inquisitorial system of jurisprudence. *In re Corrugated Container Antitrust Litigation*, 661 F.2d 1145, 1149 (7th Cir.1981) *aff'd* 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983). The privilege applies in bankruptcy proceedings. *See e.g.*, *McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924); *In re Mudd,* 95 B.R. 426 (Bankr.N. D.Tex.1989).

A. THE PRIVILEGE AS APPLIED TO THE ACT OF PRODUCING DOCUMENTS

■ The potential for proper assertion of the privilege exists if Stoecker "can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster." *In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 871 (7th Cir.1979). The protection of the Fifth Amendment applies so long as there is a possibility of prosecution, regardless of a judge's assessment of the likelihood of prosecution. *In re Corrugated Container Antitrust Litigation*, 661 F.2d at 1150. Due to the fact that Stoecker was arrested and charged with post-petition bankruptcy fraud and has been indicted, his Fifth Amendment privilege claim must be carefully scrutinized and his rights preserved.

■ The Fifth Amendment is implicated in a claim of privilege relating to the production of documents only when an individual "is compelled to make a testimonial communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976). Thus, in order to claim the privilege, a party must demonstrate that the act of producing the requested records would have both an incriminating effect and a testimonial aspect. "These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof." *Id.* at 410, 96 S.Ct. at 1580–81. Documents submitted to counsel for the debtor for the

purpose of obtaining legal advice would be privileged from the act of production if the documents would have been subject to the privilege had they remained in the debtor's hands. *Fisher*, 425 U.S. at 402, 96 S.Ct. at 1576; *In re Connelly*, 59 B.R. 421, 437 (Bankr.N.D.Ill.1986).

Under *Fisher*, work papers or other such documents prepared by Stoecker's accountants or other third parties, may be compelled when such third party has possession. *Fisher*, 425 U.S. at 409–414, 96 S.Ct. at 1580–1582; *In re Connelly*, 59 B.R. at 440. In *Fisher*, the Supreme Court held that taxpayers had no Fifth Amendment rights against the compulsory production of certain documents held by their lawyers, relating to the preparation of income tax returns. The Court emphasized that the Fifth Amendment protects the person asserting the privilege only from compelled self-incrimination. *Fisher*, 425 U.S. at 396–397, 96 S.Ct. at 1573–1574.

The United States Supreme Court has applied the Fifth Amendment privilege to bar the production of incriminating business records in two situations: (1) when the preparation of the documents was compelled by the state, and (2) when the documents were not voluntarily prepared. The act of producing such documents would be incriminating because production would concede the existence of the documents and the fact that they were in the possession and control of the individual asserting the privilege. *See generally United States v. Doe*, 465 U.S. 605, 610, 104 S.Ct. 1237, 1240–1241, 79 L.Ed.2d 552 (1984).

■ The "required records" doctrine relating to the privilege states that documents may be required to be produced when the government compels the preservation of those documents pursuant to a regulatory scheme, and the records have assumed "public aspects" which render them analogous to public documents. *Shapiro v. United States*, 335 U.S. 1, 33, 68 S.Ct. 1375, 1392, 92 L.Ed. 1787 (1948); *United States v. Porter*, 711 F.2d 1397, 1404 (7th Cir.1983). The records of any collective entity, corporation or partnership

which Stoecker possesses in a representative capacity are not privileged and must be produced even if they incriminate him personally. *See In re Connelly*, 59 B.R. at 441.[1]

In *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), the Court held that "[i]f the party asserting the privilege has voluntarily compiled the documents, no compulsion is present and the contents of the document are not privileged." *Id.* at 612 n. 10, 104 S.Ct. at 1242 n. 10. Justice Powell indicated that "the contents of business records ordinarily are not privileged because they are created voluntarily and without compulsion." *Id.* at 608–609, 104 S.Ct. at 1239–1240. That case made a clear distinction between the documents themselves and the act of producing the documents.

The Supreme Court has recently stated in *Doe v. United States*, —— U.S. ——, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988), that "the act of production could constitute protected testimonial communication because it might entail implicit statements of fact: by producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic." *Id.* 108 S.Ct. at 2347 *citing, Doe*, 465 U.S. at 613, 104 S.Ct. at 1242; *Fisher*, 425 U.S. at 409–410, 96 S.Ct. at 1580–1581. In order for a communication to be testimonial, it must explicitly or implicitly relate a factual assertion or disclose information. *Doe v. United States*, 108 S.Ct. at 2347.

**B. WAIVER OF THE PRIVILEGE BY PRIOR ACTS OR PARTIAL PRODUCTION**

 Raleigh asserts that Stoecker has waived his privilege from producing the subject documents. Although the Fifth Amendment privilege may be waived by a witness' prior statements, a waiver will not be lightly inferred. *Klein v. Harris*, 667 F.2d 274, 287 (2nd Cir.1981), *citing, Smith*

*v. United States*, 337 U.S. 137, 150, 69 S.Ct. 1000, 1007, 93 L.Ed. 1264 (1949). The test for waiver of Fifth Amendment privilege has been set forth in the Second Circuit case of *Klein v. Harris*. Waiver of the privilege against self-incrimination may be inferred if:

(1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination.

*Id.* at 287.

Courts indulge every reasonable presumption against finding a testimonial waiver. *Klein v. Harris*, 667 F.2d at 287.

It is a well-established principle that once a witness has freely testified to incriminating facts, he cannot refuse to testify as to the details, because the "[d]isclosure of a fact waives the privilege as to the details." *Rogers v. United States*, 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951); *see also In re Corrugated Container Antitrust Litigation*, 661 F.2d at 1145 (7th Cir.1981) *aff'd* 459 U.S. 248 (1983); *In re Bon Voyage Travel Agency, Inc.*, 449 F.Supp. 250, 253 (N.D. Ill.1978); *In re Mudd*, 95 B.R. 426, 432 (Bankr.N.D.Tex. 1989); *In re Hulon*, 92 B.R. 670, 673–674 (Bankr.N.D.Tex.1988); *In re Candor Diamond Corp.*, 42 B.R. 916 (Bankr.S.D.N.Y. 1984).

In the bankruptcy context concerning production of allegedly incriminating documents, Judge Abramson stated in *In re Mudd*, 95 B.R. 426 (Bankr.N.D.Tex.1989):

the Court believes that the fact that the Debtor has previously produced many of the same type of documents now requested would force the Court to find that the privilege had been waived. The same principle must apply to prior doc-

---

**1.** The Second Circuit in *In re Grand Jury Subpoenas Duces Tecum*, 722 F.2d 981 (2nd Cir. 1983), held, notwithstanding the absence of Fifth Amendment protection for corporate records, a former corporate president in posses-

sion of records was entitled to Fifth Amendment protection if his act of production had an incriminatory effect. *Id.* at 986–988. The Seventh Circuit, however, has not adopted this extension of *Fisher*.

ument production that applies to prior testimony. The witness cannot claim the Fifth Amendment privilege against self-incrimination after he has produced only a sufficient number of documents to support his side of the story; he must claim the privilege from the outset or not claim it at all.

*Id.* at 432.

This principle is equally applicable in the case at bar.

## V. DISCUSSION

Although there have been several representations to this Court in the past months in regard to the possibility of Stoecker receiving a grant of immunity, same has not been ordered to date by the District Court. The Court will not delay its decision indefinitely for a supposed grant of immunity on Stoecker's act of production which has not yet, or may never materialize. Raleigh has a compelling need to obtain the documents and information contained therein.

■■■ The Court must conduct a factual inquiry to determine the incriminating potential of the documents sought and the act of production against the privilege asserted. Stoecker bears the burden of establishing that the privilege properly applies to either the documents or the act of production. Stoecker is required to supply sufficient facts to make the requisite showing why the documents or the act of production might be incriminating. *See Butcher v. Bailey,* 753 F.2d 465, 470 (6th Cir.1985) *cert. denied* 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985). The Court must be solicitous of a debtor's claim of privilege and the benefit of any doubt as to its application goes in his favor. *In re Connelly,* 59 B.R. at 434.

■■ The requirements of the May 14, 1989 Order imposed on Stoecker the steps of furnishing the documents in question for an *in camera* review and his accompanying affidavit to establish factual bases for proper assertion of the claimed privileges. Compliance was to be made by or before May 28, 1989. Two additional months have

elapsed and the record remains devoid of any showing in accordance with the requirements of the Order. The May 14, 1989 Order was based upon the precedents of *In re Connelly,* 59 B.R. 421 (Bankr.N.D. Ill.1986) and *United States v. Duncan,* 704 F.Supp. 820, 822–823 (N.D.Ill.1989). The prior *in camera* submission of a short list summarizing the contents of nine boxes of voluminous documents consisting of thousands of pages of materials is patently insufficient to maintain the claim of privilege. Stoecker has failed to demonstrate a proper application of any privilege either to the documents or the act of producing them. A mere blanket conclusory assertion does not establish a proper basis to apply a privilege against the documents or the production. Moreover, the Court has not been furnished the specific criminal charges pending against Stoecker and any showing of how the documents relate to such charges. Therefore, the Court need not decide whether Stoecker has waived the claimed privilege by his prior turnover of other documents. Section 521(4) is constitutional as applied to the facts of this case and hence requires turnover of all subject records.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby orders Stoecker to comply with the Order dated April 27, 1989, which required turnover of all property of the estate and any recorded information including books, documents, records and papers relating to property of the estate. Further, the Court denies the motion to reconsider the April 27, 1989 Order.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.