**In re David SCHICK and Venture Mortgage Corp., Debtors.**

**Bankruptcy Nos. 96 B 42902 and 96 B 43969 (SMB).**

United States Bankruptcy Court, S.D. New York.

Oct. 16, 1997.

Parker Chapin Flattau & Klimpl, L.L.P., New York City (Lee Stremba, Henry Condell, Amos Alter, of counsel), for Aurora Cassirer, Chapter 11 Trustee.

David Schick, Brooklyn, New York, Debtor Pro se.

Gordon, Altman, Butowsky, Weitzen, Shalov & Wein, New York City (Victor J. Rocco, Jon D. Kaplon, of counsel), Criminal Counsel to David Schick.

Berlack, Israels & Liberman, L.L.P., New York City (Martin S. Siegel, of counsel), for the Official Committee of Unsecured Creditors.

Curtis, Mallet-Prevost, Colt & Mosle, New York City (Benard Preziosi, Steven J. Reisman, of counsel), for Chapter 11 Trustee of Venture Mortgage Fund, L.P.

Mary Jo White, United States Attorney for the Southern District of New York, New York City (Jonathan A. Willens, Assistant United States Attorney of counsel), for the United States of America.

## MEMORANDUM DECISION GRANTING TRUSTEE'S MOTION FOR TURNOVER OF CERTAIN PROPERTY OF THE ESTATE AND RECORDED INFORMATION

STUART M. BERNSTEIN, Bankruptcy Judge.

Aurora Cassirer, the chapter 11 trustee in these cases, has moved for an order, pursuant to 11 U.S.C. §§ 521(4), 542(a) and 542(e), directing the debtor, David Schick, to turnover a certain laptop computer (the "Computer") and information stored on its hard disk or downloaded to another storage medium (the "Information"). Schick opposes the motion, claiming that the turnover violates his Fifth Amendment privilege against compelled self-incrimination. The Official Committee of Unsecured Creditors of David Schick (the "Committee") and the trustee of the estate of Venture Mortgage Fund, L.P. support the trustee's motion, and adopt the trustee's position.

For the reasons that follow, I conclude that Schick is obligated to turn over the Computer and the Information. He has failed, despite two opportunities and warnings from the Court, to offer any evidence that the production of the requested items involves incriminating testimony. Accordingly, he has failed to sustain his burden of proof, and the trustee's motion is granted.

## BACKGROUND

Prior to the commencement of Schick's bankruptcy, Schick was implicated in allegations of criminal wrongdoing. The allegations involved orchestrating an elaborate "Ponzi" scheme that defrauded numerous investors of millions of dollars. Schick was arrested by the Federal Bureau of Investigation in connection with two criminal complaints: he was charged with bank fraud in the Southern District of New York and with wire fraud in the Eastern District of New York. He was subsequently released from custody after posting bail. He has not been indicted, and no trial date has been set.

On May 29, 1996, several of Schick's creditors filed an involuntary chapter 11 petition against him. On June 28, 1996, the Court entered an Order for Relief, and on July 8, 1996, appointed Aurora Cassirer the chapter 11 trustee of the Schick estate. On August 8, 1996, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

Since her appointment, the trustee has been investigating Schick's activities with mixed success. Schick has made certain documents available to the trustee, but she claims that Schick has failed to produce other documents or records. In addition, based upon information provided by numerous sources, the trustee states that "it was Schick's practice to record all or substantially all transactions in which he was involved on a laptop computer which he carried with him everywhere." (*Motion for Order Directing Turnover to Trustee By Debtor of Certain Property of Estate, and Recorded Information Concerning Property and Financial Affairs of Debtor, Pursuant to 11 U.S.C. §§ 521(3), (4), 542(a), (e)* (the "Motion"), dated October 29, 1996, at ¶ 13).

As a result, the trustee made the instant Motion. Relying on the Bankruptcy Code provisions discussed below, the trustee seeks to compel the turnover of the Computer and the Information.[1] The Computer and the Information are analogous to a file cabinet and its contents, and the parties and the Court have sometimes invoked the analogy in analyzing the issues.[2] In this regard, the trustee does not seem particularly interested in the "file cabinet"—although this does not affect her right to its surrender. Rather, the main dispute centers over the contents in the "drawers," *i.e.*, the information stored on the Computer's hard disk or downloaded and stored elsewhere.

Schick has steadfastly refused to surrender the Computer or Information, or even to confirm or deny their existence. He asserts the Fifth Amendment privilege against compelled self-incrimination, arguing that the act of producing these items involves incriminating testimony. The attorney representing him in criminal matters, Victor Rocco, Esq., filed a December 6, 1996 affirmation in opposition ("Rocco Affirm."), explaining the basis for invoking the privilege.[3] Most of the affirmation discusses why the production would be testimonial, (*see* Rocco Affirm. at ¶¶ 8, 10, 12, 13), or might compromise the privilege. (*Id.* at ¶¶ 14–15.) The affirmation discusses the incriminating nature of the production only in passing. For example, Rocco points out that if the Computer once existed but no longer exists, Schick would have to explain the circumstances under which it was lost or destroyed, and this may lead to an inference that he destroyed evidence to cover up a crime. (*Id.* at ¶ 9.) As to the Information, Schick maintains that the Fifth Amendment privilege applies because "the act of production . . . is testimonial and incriminates the holder of documents by admitting their exis-

tence and the defendant's control over them, and tacitly admitting their authenticity." (*Id.* at ¶ 11.)

The trustee's motion raises two issues: may the debtor invoke a Fifth Amendment privilege to prevent compliance with the turnover requirements of 11 U.S.C. § 521(4), *compare In re Ross,* 156 B.R. 272, 280–81 (Bankr.D.Idaho 1993) (Fifth Amendment privilege does not apply to debtor's production of assets and records) *with Butcher v. Bailey,* 753 F.2d 465, 467 and n. 3 (6th Cir.) (section 521(4) cannot require testimonial production of documents in disregard of any Fifth Amendment privilege) (*dicta*), *cert. dismissed,* 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985), and if the privilege does apply, whether Schick has properly invoked it. Because the answer to the second question is negative, I do not reach the constitutional issue.

## DISCUSSION

### A. The Obligations of the Debtor

The Bankruptcy Code imposes self-executing obligations upon a debtor. The debtor must cooperate with any trustee appointed in the case, 11 U.S.C. § 521(3),[4] and must surrender all property of the estate and recorded information. This latter duty is set out in 11 U.S.C. § 521(4) which provides:

The debtor shall–

. . . .

(4) if a trustee is serving in the case, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate, whether or not immunity is granted under section 344 of this title.[5]

---

1. The trustee had also served a subpoena upon Schick pursuant to an earlier Rule 2004 order, but the Motion relies upon the general turnover provisions of the Bankruptcy Code and does not specifically seek to enforce the subpoena.

2. For this reason, this decision sometimes refers to the Information as if it consisted of documents.

3. Schick eventually filed his own affidavit which is discussed toward the end of this decision.

4. Section 521(3) provides that "[t]he debtor shall . . . if a trustee is serving in the case, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title."

5. Section 344 states that "[i]mmunity for persons required to submit to examination, to testify, or to provide information in a case under this title may be granted under part V of title 18."

Other provisions of the Bankruptcy Code impose analogous obligations on a much broader class. With certain exceptions, any entity in possession, custody or control of property that the trustee can use, sell or lease, must turn that property over to the trustee. 11 U.S.C. § 542(a).[6] Further, and subject to any applicable privilege, any person that holds recorded information relating to the debtor's property or financial affairs may be compelled, pursuant to separate court order, to turn over or disclose that recorded information to the trustee. 11 U.S.C. § 542(e).[7]

The Motion seeks property and information that appear to fall squarely within 11 U.S.C. § 521(4) and the broader turnover provisions applicable to entities or persons. In any event, Schick does not contest the trustee's claim of entitlement—indeed, he refuses to divulge anything regarding the nature or existence of the property or information at issue, simply invoking his privilege against self-incrimination.[8] Accordingly, the trustee has established her *prima facie* right to the Computer and the Information, and to defeat the Motion, Schick must prevail on his Fifth Amendment claim.

## B. The Privilege Against Self-Incrimination

### 1. Introduction

 The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. The Amendment applies when the witness "is compelled to make a Testimonial Communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976); *accord Two Grand Jury Contemnors v. United States (In re Grand Jury Subpoena)*, 826 F.2d 1166, 1168 (2d Cir.1987), *cert. denied*, 487 U.S. 1218, 108 S.Ct. 2870, 101 L.Ed.2d 905 (1988); *United States v. Fox*, 721 F.2d 32, 36 (2d Cir.1983). The privilege is not limited to criminal proceedings. It may be available in civil or administrative proceedings if compelled testimony might lead to incrimination in future criminal proceedings. *See Kastigar v. United States*, 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). The privilege does not, however, reach the content of voluntarily created documents because there is no compulsion to create them. *United States v. Doe*, 465 U.S. 605, 612 n. 10, 104 S.Ct. 1237, 1242 n. 10, 79 L.Ed.2d 552 (1984) ("If the party asserting the Fifth Amendment privilege has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged."); *In re Grand Jury Subpoena Duces Tecum Dated October 29, 1992*, 1 F.3d 87, 90 (2d Cir.1993) (no privilege regardless of whether voluntarily created documents are business or personal), *cert. denied*, 510 U.S. 1091, 114 S.Ct. 920, 127 L.Ed.2d 214 (1994). This is particularly true where the contents of the documents relates to debtors, their property and their business transactions. *See Butcher v. Bailey*, 753 F.2d at 469; *Dor-*

6. Section 542(a) provides:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

7. Section 542(e) provides:

> Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information on the trustee.

8. The assertion of the Fifth Amendment privilege, in response to the obligations imposed under 11 U.S.C. § 521(4), implicates the constitutionality of that subsection. The statute seems to require compliance even if immunity is not granted. Accordingly, the Court notified the Attorney General of the United States of Schick's constitutional challenge, *see* 28 U.S.C. § 2403(a); Fed.R.Civ.P. 24(c), and invited further briefing from the parties. The United States Attorney's Office responded by letter dated August 13, 1997. The Government supports the position taken by the trustee and the Committee that section 521(4) is constitutional and that Schick has failed to sustain his burden of proof.

*rough v. Third Nat'l Bank (In re Toyota of Morristown, Inc.)*, 120 B.R. 925, 929 (Bankr. E.D.Tenn.1990).

## 2.  The Act Of Production Doctrine

▮ Although the contents of documents are not privileged, the mere act of producing them may be if production provides "link[s] in the chain of evidence needed to prosecute" that individual. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). Production may tacitly concede the existence of the item, the producer's possession or control over the item, and might serve to authenticate the item. *United States v. Doe*, 465 U.S. at 612–13, 104 S.Ct. at 1242–43; *Fisher v. United States*, 425 U.S. at 410, 96 S.Ct. at 1580–81; *Butcher v. Bailey*, 753 F.2d at 469. Accordingly, the act of producing documents may require incriminating testimony if the existence or location of the documents is unknown to the government, or the act of producing the documents implicitly authenticates them, *and* in so doing, provides "a link in the chain of incrimination." *United States v. Fox*, 721 F.2d at 36; *accord In re Grand Jury Subpoena Duces Tecum Dated October 29, 1992*, 1 F.3d at 93. Conversely, there is no privilege if the existence, location or authenticity is a "foregone conclusion." *Fisher v. United States*, 425 U.S. at 411, 96 S.Ct. at 1581; *accord In re Grand Jury Subpoena Duces Tecum Dated October 29, 1992*, 1 F.3d at 93; *Butcher v. Bailey*, 753 F.2d at 470. In addition, the privilege does not apply to documents held in a representative rather than a personal capacity. *Rogers v. United States*, 340 U.S. 367, 371–72, 71 S.Ct. 438, 440–42, 95 L.Ed. 344 (1951).

▮ The invocation of the "act of production" privilege implicates a two part inquiry: (1) the court must determine whether the production of documents is testimonial, and (2) the party asserting the privilege must show that it is incriminating, *i.e.*, that it provides "a link in the chain of incrimination". *See In re DG Acquisition Corp.*, 208 B.R. 323, 330 (Bankr.S.D.N.Y.1997). The party does not discharge the burden simply by asserting that he will incriminate himself by producing the documents:

> The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified. . . .

*Hoffman v. United States*, 341 U.S. at 486, 71 S.Ct. at 817–18; *accord United States v. Fox*, 721 F.2d at 40; *see In re Stoecker*, 103 B.R. 182, 188 (Bankr.N.D.Ill.1989); *cf. In re Martin–Trigona*, 732 F.2d 170, 176 (2d Cir.) (debtor's position that "he should be the final arbiter of the necessity of his testimony . . . mocks the court's role as a truthseeker"), *cert. denied*, 469 U.S. 859, 105 S.Ct. 191, 83 L.Ed.2d 124 (1984).

The accused must provide enough information to enable the Court to "conduct a factual inquiry to determine the incriminating potential of the documents sought and the act of production against the privilege asserted." *In re Stoecker*, 103 B.R. at 188. This does not require the party to disclose the contents of the documents, and in the process, compromise the privilege he seeks to protect. He may meet his burden by submitting a written explanation, *in camera* if requested, identifying the documents held in his personal capacity,[9] and as to each document, explaining in general or circumstantial terms why production is incriminating. *McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.*, 115 F.R.D. 528, 531–32 (D.Mass.1987). If the documents fall into categories, the court may make the determination on a category by category basis, *Butcher v. Bailey*, 753 F.2d at 470; *see FSLIC v. Hardee*, 686 F.Supp. 885, 887 (N.D.Fla.1988), but the party asserting the privilege bears the burden of classifying the documents. *Butcher v. Bailey*, 753 F.2d at 470. As long as sufficient reasons are given to permit the court to independently determine that a real danger exists, the privilege will be upheld. *Id.*; *McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.*, 115 F.R.D. at 532; *In re Stoecker*, 103 B.R. at 188 (court must be solicitous of claim

---

9.  He must produce the documents held in his     representative capacity.

of privilege and give party the benefit of any doubt).

## C. The Computer

■■■ As a rule, the surrender of property of the estate is not testimonial, and hence, does not implicate Fifth Amendment concerns. *See, e.g., In re Ross,* 156 B.R. at 281; *In re Krisle,* 54 B.R. 330, 340–41 (Bankr. D.S.D.1985); *In re Devereaux,* 48 B.R. 644, 646 (Bankr.S.D.Cal.1985); *In re Crabtree,* 39 B.R. 726, 732 (Bankr.E.D.Tenn.1984); *but see In re Connelly,* 59 B.R. 421, 444 (Bankr. N.D.Ill.1986) (acknowledging the existence of the privilege but concluding that potential tacit admissions involved in surrendering physical assets to the trustee would not likely rise to the level of testimony for Fifth Amendment purposes). However, even if the surrender of the Computer tacitly conceded its existence, location and authenticity as property of the estate, Schick has failed to demonstrate that this testimony would be incriminating. It is not a crime to possess a laptop computer or to record information on its hard disk. Schick is not charged with stealing a computer, possessing a stolen computer, or unlawfully maintaining records on a computer. The existence of the Computer or Schick's ownership of it are irrelevant to the charges of bank and wire fraud. Further, Schick does not offer any cogent reason why turning over just the Computer (*i.e.,* the empty filing cabinet) is incriminating.

Rather, he appears more concerned with the implication of not turning it over. His attorney suggests that the inability to surrender the Computer could signify that he destroyed the Computer to cover his alleged crimes, and this, in turn, could be used as evidence of his guilt. (Rocco Affirm. at ¶ 9.) This speculation is unfounded because it overstates the implication should Schick not surrender the Computer. Contrary to Rocco's expressed concern, Schick is not being asked to account for the whereabouts of any property of the estate or give incriminating testimony that he destroyed the Computer: I doubt he could ever be compelled to give that testimony. Instead, he is being asked to surrender property of the estate.

If Schick does not turn over a laptop computer, this failure or inability gives rise to a host of possibilities—the Computer never existed, it broke, it was loaned to someone else or it was otherwise disposed of for any number of reasons having nothing to do with invidious motives. Further, it says nothing about the fate of the Information allegedly stored on the hard disk, the chief concern of everyone involved. In this regard, people often dispose of computers that become obsolete or break, but retain the information stored on the hard disk. The inability to turn over the Computer does not, therefore, imply anything incriminating. This does not preclude a possible circumstance in which a person could legitimately refuse to confirm or deny the existence of a particular piece of property. However, Schick has failed to show how the inability to turn over the Computer, even if testimonial, is also incriminating.

## D. The Information

■■■ I assume for the sake of argument that the production of the Information would be testimonial. When a witness turns over documents, he says "I have these documents" and "these seem to be the documents you want." *In re DG Acquisition Corp.,* 208 B.R. at 330 n. 11. Tracking the language of section 521(4), one could conclude that by producing the Information, Schick implicitly represents that the Information relates to property of the estate.

It does not follow, *ipse dixit,* that the act of producing the Information is incriminating, or that the existence of an ongoing criminal investigation automatically shields every document in Schick's possession. The party asserting the privilege must also show that the testimonial act of producing the documents provides a link in the chain of incrimination. Persons under criminal investigation may still possess innocuous documents; but if they do not, they must prove it to the satisfaction of the court, and more is required besides their "say so." The fallacy of Schick's position largely lies in his combining the two pronged test into the single

inquiry whether the act of production is testimonial. (*See* Rocco Affirm. at ¶ 11.) [10]

Here, Schick has failed to explain how acknowledging the existence, location or authenticity of documents relating to property of the estate establishes a link in the chain of incrimination. On its face, it is not incriminating, and moreover, may be a foregone conclusion with respect to certain documents. Schick's position, however, prevents me from making this determination.

In addition, two categories of information come to mind which Schick might have to produce in any event. First, the proceedings thus far confirm that Schick wore many hats. He acted as a partner in general and limited partnerships and as a shareholder and officer in corporations. Information which he holds in his representative capacity—but which also relates to property of the estate—would have to be produced. Because Schick refuses to identify the documents in any manner, it is impossible to determine if he is wrongfully withholding records in this category.

Second, Schick was a licensed attorney who often received money from and on behalf of third parties which he deposited into his firm or individual attorney accounts. Many of the disputes coming before me concern ownership of the funds passing through his accounts or the property purchased with those funds. Eventually, he was suspended from the practice of law based upon complaints that he misappropriated client funds that he was obligated to hold in escrow. *Matter of Schick,* 225 A.D.2d 55, 648 N.Y.S.2d 30, 31 (1st Dep't 1996).[11]

The rules applicable in all appellate divisions in New York impose comprehensive recordkeeping requirements on attorneys who receive and hold property belonging to a third party. *See* N.Y.Code of Professional Responsibility D.R. 9–102, 22 N.Y.C.R.R. § 1200.46 (McKinney 1997). The records which the rules require an attorney to maintain satisfy the "required records" exception to the Fifth Amendment privilege. *Cf. In re Two Grand Jury Subpoenae Duces Tecum Dated August 21, 1985,* 793 F.2d 69, 73 (2d Cir.1986) (retainer agreements and closing statements required by the appellate division rules fall within the "required records" exception). The exception overrides the privilege against self-incrimination where it would otherwise apply, and thus, requires production even if the compelled production is testimonial and incriminating. *Id.* Once again, it is not possible to determine if any of Schick's records fall into this category, or any other category that would also satisfy the "required records" exception to the Fifth Amendment privilege against self-incrimination.

Accordingly, I conclude that Schick has failed to sustain his burden of proving that production of the Computer or Information involves incriminating testimony. Further, I am not inclined to grant Schick another chance because he has already had two. *See FSLIC v. Hardee,* 686 F.Supp. at 888 (declining to give a witness a third chance to establish her right to Fifth Amendment protection). When Schick initially opposed the motion, he asserted a blanket privilege. During subsequent proceedings, I admonished Schick and his criminal counsel that he had not met his burden of proof. Last spring, I scheduled a conference at which I asked the parties to focus on whether Schick could invoke a Fifth Amendment privilege in light of the language of section 521(4) which seemed to preclude it. At the same time, I informed Schick and his counsel:

If the Debtor is going to assert that he has such a [Fifth Amendment] privilege

**10.** Rocco cites *United States v. Doe,* 465 U.S. at 612–14, 104 S.Ct. at 1242–43, to support this conflated test. The case indicates, however, that the testimonial nature of the act of production is a separate inquiry from whether it is also incriminating. *See id.* at 614 n. 13, 104 S.Ct. at 1243 n. 13. Another case that Rocco cites, *In re Stoecker,* 103 B.R. 182 (Bankr.N.D.Ill.1989), emphasizes that the party invoking the privilege must "supply sufficient facts to make the requisite showing why the documents or the act of production might be incriminating ... A mere blanket conclusory assertion does not establish a proper basis to apply a privilege against the documents or the production." *Id.* at 188.

**11.** Schick has since been disbarred. *Matter of Schick,* 231 A.D.2d 262, 659 N.Y.S.2d 435, 435–36 (1st Dep't 1997).

and it's applicable, he has a burden of proof which he has not met, at least—or a burden of going forward and a burden of proof which he has not met, at least with respect to the information which I take it is the real issue here on the computer.

I would refer you to the Sixth Circuit case of *Butcher v. Bailey*. Again, no one discussed it, at 753 F.2d 465 which deals with this specific issue of an involuntary case, a requirement to turn over books and records, the invocation of the active [*sic*] production privilege and what the Debtor has to do in order to meet his burden.

The decision talks about—he has to identify the types by category of documents that he has, which he claims are subject to an active [*sic*] production privilege. You can't just say I am not turning over anything, because if I do, then somehow that will invoke a privilege.

(Transcript of hearing, held Apr. 2, 1997, at 5.)

I repeated the need for additional proof a few minutes later:

THE COURT: All right. Before I even consider the issue [of the applicability of the Fifth Amendment privilege], you are going to have to convince me that—not so much with respect to the computer, because I know what you said about the computer, but with respect to anything else on that computer that there is some basis to invoke a privilege against self-incrimination. *If you have to do it in some sort of in camera Affidavit, you can do it.*

(*Id.* at 11) (emphasis added.)

I thereafter advised Schick and his counsel, for a third time, that they must file more information about the documents:

THE COURT: You will have to file some more information, not just a brief, at least regarding the documents, or the information—

(*Id.* at 13.)

In response, Schick has offered his own conclusory affidavit that adds nothing to the record. He explains the incriminating nature of the act of production in the following manner:

The alleged laptop computer, if it exists, would provide a link in a chain of evidence that could be used against me in a criminal prosecution for fraud if in fact the Trustee's allegation is true. Likewise, the kinds of records that such a computer would contain, if they do exist, would be records that would provide a potential roadmap, in theory, to the alleged fraudulent scheme to which the Trustee has referred in her motion, and for which I am under investigation.

(Affidavit of David Schick, sworn to Apr. 25, 1997, at ¶ 6.)

Having made himself the sole arbiter of the issue, he disposes of the salutary effect of *in camera* proceedings with a wave of the hand:

The Court has asked that I produce documents for in camera inspection so that it can determine if I have any valid basis to assert a fifth amendment privilege. I cannot submit to such a procedure because the very act of producing such documents would establish the existence, whereabouts and authenticity of said documents, and as such would in and of itself be testimonial. Likewise, if I were to admit that the documents do not exist or no longer exist, that too would provide testimonial information.

(*Id.* at ¶ 7.)

These proceedings have gone on for nearly one year, and it is time to end them. Schick has been given numerous opportunities to prove the incriminating nature of the act of production, but has declined. Instead, he has arrogated this determination to himself, and forced me to accept his "say so." His conclusory statements that the production or inability to produce the Computer or the Information "would provide a link in the chain of evidence" or a "potential roadmap" are catchy but impossible to measure.

Accordingly, the trustee's motion is granted. Schick is directed to turn over the Computer and the Information and certify that he has done so. *See In re Devereaux*, 48 B.R. at 647 (debtor's certification that he has surrendered all property of the estate falls outside protection of Fifth Amendment privi-

lege). I am simultaneously signing an order consistent with this opinion.