■ In the Matter of the Estate of ELMER E. BALDWIN, Deceased. MICHELLE J. HARPP, Individually and as Executor of ELMER E. BALDWIN, Deceased, Respondent-Appellant; MICHAEL T. BROCKBANK, Appellant-Respondent, and STATE OF NEW YORK et al., Respondents. [745 NYS2d 265] —Mercure, J. Appeals (1) from an order of the Surrogate's Court of Fulton County (Lomanto, S.), entered October 11, 2001, which, inter alia, granted respondent Attorney General's motion to dismiss respondent Michael T. Brockbank's objections to decedent's will, and (2) from an order of said court, entered December 17, 2001, which granted respondent Michael T. Brockbank's application for an award of counsel fees.

Elmer E. Baldwin (hereinafter decedent) died a resident of Fulton County on July 13, 1999. As relevant to this appeal, decedent executed two wills: (1) a January 30, 1990 will, which bequeathed decedent's entire estate to his wife or, in the event that she predeceased him, to several named educational institutions (hereinafter the charitable beneficiaries), and which appointed respondent Michael T. Brockbank, decedent's then attorney, as successor-executor, and (2) an August 13, 1997 will prepared by attorney Alvan Hutchinson Jr., which bequeathed substantially all of decedent's approximately $1.2 million estate 70% to petitioner, who was the home health care aide then caring for decedent, and her husband or the survivor of them and 30% to Hutchinson's granddaughter (referred to in the will as decedent's goddaughter), and which appointed Hutchinson as executor and petitioner as alternate executor. Both decedent's wife and Hutchinson predeceased decedent.

In July 1999, petitioner filed a petition for probate of the August 13, 1997 will. Surrogate's Court granted the petition and issued a decree admitting the will to probate and granting letters testamentary to petitioner. In January 2000, however, Brockbank filed an application to reopen probate and contest the August 13, 1997 will and also for the production and exam-

ination of decedent's prior wills. Concluding that Brockbank had standing pursuant to SCPA 1410 and that evidence taken by an evaluator in a proceeding for the appointment of a guardian under Mental Hygiene Law article 81, initiated by Brockbank prior to decedent's death, raised "a very serious issue" concerning decedent's capability to make a valid will, Surrogate's Court denied petitioner's ensuing motion to dismiss the application. Thereafter, citations were issued to the charitable beneficiaries; the Attorney General appeared as their statutory representative (*see*, EPTL 8-1.1 [f]) and one of them, respondent Albany Academy for Girls (hereinafter the Academy), appeared by its own counsel. Subsequently, Brockbank, the Attorney General and the Academy filed separate objections to probate of the August 13, 1997 will, each alleging, as relevant to this appeal, that decedent lacked testamentary capacity and that the August 13, 1997 will was procured by the fraud and undue influence of petitioner and Hutchinson.

The Attorney General, the Academy and petitioner then engaged in settlement negotiations—Brockbank's counsel was specifically excluded therefrom—and in August 2001 the Attorney General, supported by petitioner, moved for an order (1) vacating so much of Surrogate's Court's prior order as granted Brockbank standing and (2) dismissing Brockbank's objections to the August 13, 1997 will. Brockbank cross-moved for an order suspending petitioner's letters testamentary and appointing himself or another qualified person as "special administrator" of decedent's estate. Concluding that the Attorney General's appearance on behalf of the charitable beneficiaries "obviate[d] the need" for Brockbank's continued involvement, Surrogate's Court granted the Attorney General's motion. By order entered October 11, 2001, Surrogate's Court dismissed Brockbank's objections and denied his cross motion. Brockbank appeals. By subsequent order entered December 17, 2001, Surrogate's Court awarded Brockbank counsel fees to be paid from decedent's estate for his efforts in raising the issue of decedent's mental state. Petitioner appeals.

Initially, we are not persuaded that Surrogate's Court erred in ultimately dismissing Brockbank's objections to decedent's will. Pursuant to SCPA 1410, a person "whose only financial interest [in the estate of a testator] would be in the commissions to which he [or she] would have been entitled if his [or her] appointment as fiduciary were not revoked by a later instrument shall not be entitled to file objections to the probate of such instrument unless authorized by the court for good cause shown." Surrogate's Court's initial determination to deny

petitioner's May 2000 motion to dismiss Brockbank's application was based on its conclusion that the requisite "good cause" had been demonstrated through evidence raising doubts as to decedent's testamentary capacity at the time of a March 1997 evaluation, justifying the reopening of the probate proceeding and the production of all known prior wills of decedent (*see, Matter of Marks*, 142 Misc 2d 733, 736-737). Notably, although Surrogate's Court's obvious intent was to permit a judicial determination of Brockbank's plausible claims of lack of testamentary capacity, undue influence and fraud, nothing in its written decision evidences a belief that Brockbank was the only person who could adequately champion that cause.

Following the Attorney General's appearance in the proceeding, Surrogate's Court reasonably concluded that the interests of the beneficiaries under the prior will were adequately represented. Further, although there can be no question that Brockbank had a legal duty to prevent the frustration of decedent's wishes and to make his best effort to effectuate decedent's expressed intentions (*see, Matter of Lerman*, 238 AD2d 341; *Matter of Peckolick*, 167 Misc 2d 597, 599; *Matter of Marks, supra* at 736), we are not persuaded that the Attorney General's involvement in the proceeding on behalf of the charitable beneficiaries was not likely to serve the same purpose. Unlike Brockbank, we do not view the willingness of the Attorney General and the charitable beneficiaries to enter into a negotiated settlement of the dispute as evidence of their unwillingness or inability to further decedent's testamentary scheme, and we conclude that Surrogate's Court did not abuse its discretion in dismissing Brockbank's application despite its earlier denial of that relief to petitioner (*see, Matter of Colby*, 240 AD2d 338, 339, *lv denied* 91 NY2d 801).

Finally, we are not persuaded that Surrogate's Court erred in its award of counsel fees to Brockbank. The contrary argument advanced by petitioner and the Academy is premised on the erroneous assumption that Brockbank's only interest in decedent's estate was the executor's commissions to which he would have been entitled had decedent's January 30, 1990 will been admitted to probate as decedent's last will. "It is clear that all fiduciaries named by a testator are duty bound to prevent the frustration of [the testator's] wishes as well as to effectuate to the best of their ability his [or her] expressed intentions" (*Matter of Marks, supra* at 736; *see, Matter of Lerman, supra; Matter of Peckolick, supra* at 599). As properly recognized by Surrogate's Court, Brockbank unselfishly and effectively pursued his duty to prevent the frustration of

decedent's wishes and to effectuate decedent's intentions as expressed in the 1990 will, thereby providing invaluable service to Surrogate's Court and substantial benefit to the charitable beneficiaries. Under the circumstances, we conclude that the subject award of counsel fees was authorized pursuant to SCPA 2110 (1).

The parties' remaining contentions either need not be addressed or have been considered and found to be unavailing.

Spain, Carpinello and Mugglin, JJ., concur; Cardona, P.J., not taking part. Ordered that the orders are affirmed, without costs.