[866 NE2d 1009, 834 NYS2d 681]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WIL-
LIAM P. HAVRISH, Appellant.

Argued February 8, 2007; decided April 3, 2007

### POINTS OF COUNSEL

*Jacobs & Jacobs,* Stamford (*Patrick J. Cannon* of counsel), for appellant. I. County Court Judge Bartlett erred in reversing Town Justice Hait's order suppressing evidence and dismissing the accusatory instrument filed against appellant. (*United States v Hubbell,* 530 US 27; *People v Mitchell,* 61 NY2d 580; *People v Berg,* 92 NY2d 701; *Schmerber v California,* 384 US 757; *People v Slavin,* 1 NY3d 392, 543 US 818; *United States v Doe,* 465 US 605; *Baltimore City Dept. of Social Servs. v Bouknight,* 493 US 549; *United States v Wade,* 388 US 218; *Holt v United States,* 218 US 245; *Gilbert v California,* 388 US 263.) II. Town Justice Hait correctly ruled that the evidence against appellant had been obtained in violation of his constitutional rights and dismissed the charge against him. (*People v Wagman,* 99 AD2d 519; *Marchetti v United States,* 390 US 39; *Grosso v United States,* 390 US 62; *Kastigar v United States,* 406 US 441; *United States v United States Coin & Currency,* 401 US 715; *Kemp v Lynch,* 275 AD2d 1024; *United States v Kordel,* 397 US 1; *Miranda v Arizona,* 384 US 436; *Schmerber v California,* 384 US 757; *United States v Wade,* 388 US 218.)

*James Sacket, District Attorney,* Schoharie (*Thomas F. Garner* of counsel), for respondent. I. County Court correctly held that William Havrish's right against self-incrimination was not violated. (*Schmerber v California,* 384 US 757; *United States v Wade,* 388 US 218; *Curcio v United States,* 354 US 118; *Holt v United States,* 218 US 245; *Gilbert v California,* 388 US 263; *Baltimore City Dept. of Social Servs. v Bouknight,* 493 US 549; *People v Slavin,* 1 NY3d 392; *People v Berg,* 92 NY2d 701.) II. No evidence was obtained from William Havrish in violation of his constitutional rights.

**OPINION OF THE COURT**

GRAFFEO, J.

In complying with an order of protection that directed him to turn over his firearms to police, defendant produced an unlicensed handgun and was subsequently charged with criminal possession of a weapon in the fourth degree. The issue before us is whether defendant's surrender of the handgun was privileged under the Fifth Amendment. We conclude that it was and therefore reverse the order of County Court, grant defendant's motion to suppress and dismiss the accusatory instrument.

On April 8, 2005, defendant was charged in Delhi Town Court with assault in the third degree, burglary in the second degree and kidnapping in the second degree in connection with a domestic violence incident in Delaware County. The Town Court set bail and issued an order of protection directing defendant to stay away from the victim and to "[s]urrender any and all firearms owned or possessed."

After defendant posted bail, the police accompanied him to his residence in Schoharie County where defendant promptly gave the officers his "long guns." Defendant advised the authorities that he owned a handgun but had given it to his ex-wife. The police contacted defendant's ex-wife, who informed them that she did not possess the pistol but believed defendant still had it. She claimed to have last seen the gun in a small room off the living room in defendant's home. With some equivocation, she also indicated that the handgun was not licensed.

Before the authorities acted on the information supplied by defendant's ex-wife, defendant called one of the officers and said that he had located the pistol. When the police arrived at his home, defendant brought them to a small room next to the living room where they retrieved a Ruger Blackhawk .44 magnum revolver from a milk crate.

Once the police confirmed that defendant did not have a license for the handgun, defendant was charged in Jefferson Town Court with criminal possession of a weapon in the fourth degree, a class A misdemeanor. He moved to dismiss the accusatory instrument on the ground that the gun and his statements to police must be suppressed because he was compelled to produce evidence protected by the Fifth Amendment right against self-incrimination. Defense counsel argued that the order direct-

ing defendant to turn over his weapons created an impossible dilemma since defendant was required either to produce the unlicensed pistol, thereby incriminating himself, or defy the court order and risk being prosecuted for criminal contempt. Among other arguments, the People countered that defendant's Fifth Amendment rights were not implicated because surrender of the revolver involved the production of physical evidence that was not communicative or testimonial in nature.[1]

Jefferson Town Court granted defendant's motion to suppress, concluding that, for purposes of the weapon possession prosecution, defendant's surrender of the pistol was privileged under the Fifth Amendment. Because the People did not assert that they possessed independent evidence of defendant's guilt, the court determined that dismissal of the accusatory instrument was also warranted. On the People's appeal, County Court reversed and reinstated the charge, reasoning that the order directing defendant to surrender the handgun involved the production of real or physical evidence, not compelled communication, and therefore did not run afoul of the Fifth Amendment. A Judge of this Court granted defendant leave to appeal and we now reverse.

The Fifth Amendment guarantees that an individual shall not "be compelled in any criminal case to be a witness against himself" (US Const 5th Amend). "[T]he privilege protects an accused . . . from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature" (*Schmerber v California*, 384 US 757, 761 [1966]). There are thus two elements to the privilege: the presence of compulsion and the solicitation or receipt by the government of evidence of a testimonial nature.

Here, the element of state compulsion was unquestionably met. Defendant was ordered by a court to surrender his weapons. Had he failed to do so, he could have been prosecuted for criminal contempt. The more difficult question is whether compliance with the order supplied testimonial or communicative evidence or whether, as County Court concluded, defendant was merely directed to supply "real or physical evidence" not protected by the Fifth Amendment.

---

1. The People also contended that defendant could not seek suppression based on the Fifth Amendment because he did not invoke the privilege before he turned over the weapon (*see e.g. Roberts v United States*, 445 US 552, 559-561 [1980]). The People having failed to brief this argument on appeal, we have no occasion to consider it.

It is well settled that a person can be forced to produce real or physical evidence without offending the privilege against self-incrimination (*id.*). Cases in which a defendant is required to engage in conduct that reveals the physical characteristics of his or her body generally fall in the "real or physical evidence" category. For example, in *Schmerber*, the Court held that the requirement that a defendant accused of driving while intoxicated submit to a blood test did not implicate the Fifth Amendment privilege because defendant's "testimonial capacities were in no way implicated; indeed, his participation, except as a donor, was irrelevant to the results of the test, which depend on chemical analysis and on that alone" (*id.* at 765).

The Fifth Amendment therefore "offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture" (*id.* at 764). Similarly, a defendant can be ordered to participate in a lineup (*see United States v Wade*, 388 US 218 [1967]) or to provide a handwriting exemplar (*see Gilbert v California*, 388 US 263 [1967]) without implicating the privilege against self-incrimination. Our Court has applied the *Schmerber* analysis on a number of occasions, holding that field sobriety tests conducted during a traffic stop were the equivalent of real or physical evidence not protected under the Fifth Amendment (*People v Hager*, 69 NY2d 141 [1987]; *see People v Berg*, 92 NY2d 701 [1999]) and that a defendant could not rely on the privilege to avoid compliance with a court order requiring him to display his upper body tattoos (*see People v Slavin*, 1 NY3d 392 [2004], *cert denied* 543 US 818 [2004]).

The People rely on the *Schmerber* analysis in asserting that defendant's surrender of the revolver was not conduct protected by the Fifth Amendment. But the surrender of evidence—even evidence not otherwise cloaked by the privilege—may itself be privileged if the very act of production has communicative or testimonial aspects (*see e.g. United States v Doe*, 465 US 605, 613 [1984] [*Doe I*]). Although the act of production doctrine has most commonly been applied to the surrender of subpoenaed documents, the U.S. Supreme Court has indicated that it can also apply to the compelled production of other types of evidence (*see Baltimore City Dept. of Social Servs. v Bouknight*, 493 US 549 [1990]; *but see United States v Patane*, 542 US 630, 644 n 7 [2004]). And the Court has emphasized that the item produced is distinct from the act of production itself. In sum,

even when the thing demanded is not privileged, the act of production may be (*see Doe I*, 465 US at 613).[2]

In *Bouknight*, the judge presiding over a child-protective proceeding ordered a mother to produce her child in court. She refused, invoking the Fifth Amendment. In considering whether the mother could rely on the act of production doctrine to avoid compliance with the court order, the Court explained the doctrine as follows:

> "When the government demands that an item be produced, the only thing compelled is the act of producing the item . . . The Fifth Amendment's protection may nonetheless be implicated because the act of complying with the government's demand testifies to the existence, possession, or authenticity of the things produced" (493 US at 554-555 [internal quotation marks, citations and brackets omitted];
> *see United States v Hubbell*, 530 US 27, 36 [2000]).

Ultimately, the Court held the doctrine inapplicable to the mother's circumstance because it could not be used to resist compliance with a civil regulatory regime constructed to effectuate governmental purposes unrelated to law enforcement— the social services system designed for the protection of children.

In this case, the People did not assert below, and do not argue here, that the *Bouknight* regulatory regime exception applies to this factual scenario.[3] Thus, the pivotal issue here is whether

---

2. For example, in the case of a document, the contents are not deemed to have been compelled if the document was prepared voluntarily. Even if the contents of the document are not cloaked with the privilege because the element of compulsion is absent, the doctrine may apply to privilege the act of producing the document (*Doe I*, 465 US at 617 n 17; *see Fisher v United States*, 425 US 391, 409-410 [1976]). Similarly, in *Bouknight* where the Supreme Court considered whether a mother could invoke the privilege in order to avoid producing her child for a court proceeding, the Court noted that, if the doctrine applied, the baby itself was not privileged and the mother could not "claim the privilege based upon anything that examination of [the child] might reveal" (493 US at 555). Instead, the privilege would apply to the mother's conduct. Thus, the fact that the item to be produced is "real or physical evidence" not protected under the privilege does not automatically preclude application of the act of production doctrine.

3. Any argument concerning the applicability of the regulatory regime exception is both unpreserved and waived. Moreover, even if the exception applied, it is not clear to what extent it would assist the People. In *Bouknight*, the Supreme Court did not define the limitations on the use of testimonial evidence obtained by virtue of the regulatory regime exception but noted in dicta

defendant's act of producing the unlicensed handgun was privileged. The Supreme Court has developed a two-part test for resolving this question (*see Fisher v United States*, 425 US 391 [1976]).

First, a court must assess whether the compelled act of production is sufficiently testimonial. Under the Fifth Amendment, evidence is deemed testimonial when it reveals defendant's subjective knowledge or thought processes—when it expresses the contents of defendant's mind (*Doe v United States*, 487 US 201, 211 [1988] [*Doe II*]; *Hager*, 69 NY2d at 142). The surrender of evidence can be testimonial if, by doing so, defendant tacitly concedes that the item demanded exists or is in defendant's possession or control when these facts are unknown to the authorities and would not have been discovered through independent means. Put another way, the inquiry is whether the existence of the item sought, or defendant's possession of it, was a "foregone conclusion and the [defendant] adds little or nothing to the sum total of the Government's information by conceding that he in fact has the [item]" (*Fisher*, 425 US at 411). In that circumstance, the act of production is not sufficiently testimonial to implicate the Fifth Amendment.

Second, a court must determine whether the act of production is incriminating. If the subjective information the government will obtain through the act of production does not "pose[ ] any realistic threat of incrimination" (*id.* at 412) but presents "merely trifling or imaginary[ ] hazards of incrimination" (*Doe I*, 465 US at 614 n 13 [internal quotation marks and citations omitted]), the act enjoys no Fifth Amendment protection. Both elements must be fulfilled for an act of production to be privileged and the Supreme Court has made clear that the elements "do not lend themselves to categorical answers; their resolution . . . instead depend[s] on the facts and circumstances of particular cases" (*Fisher*, 425 US at 410).

Turning to the first inquiry, in this case we cannot say that, absent defendant's court-ordered surrender of the revolver, the discovery that defendant possessed an unlicensed handgun would have been a "foregone conclusion." Before defendant revealed that he had possessed a revolver, neither the court nor the police were aware that defendant owned a handgun.

that "the Fifth Amendment protections are not . . . necessarily unavailable to the person who complies with the regulatory requirement after invoking the privilege and subsequently faces prosecution" (493 US at 561-562).

Furthermore, defendant's statements about the gun were integral to compliance with the directive in the order of protection. Although it is conceivable that defendant could have heeded the order without uttering a word about his weapons, it was reasonably likely that defendant's response would include verbal communications concerning their existence and location. The statements defendant made—advising police that he owned a revolver and indicating where it was—went no further than what a person complying with such an order would have been expected to communicate. They were therefore central to and part of the act of production. And that act was the exclusive source of evidence the People relied on in pursuing the prosecution for criminal possession of a weapon.

The People have not come forward with evidence suggesting that, incident to the charges in the domestic violence case, they were independently investigating whether defendant owned a handgun. It is true that defendant's ex-wife disclosed information to the authorities concerning the unlicensed revolver, but there is no basis in the record to conclude that the police would have contacted her if defendant had not earlier indicated that she had the gun.[4] Nor have the People proffered evidence that the victim of the domestic violence incident knew of the pistol or that, in the ordinary course of investigation of that incident, she would have necessarily alerted them to defendant's unlawful possession of it. Had this information been provided, the police may well have been able to obtain the weapon through execution of a search warrant. But, on this record, defendant's surrender of the gun was testimonial because it revealed defendant's subjective thought processes—that he knowingly possessed the weapon—and, absent this revelation, the information would not have come to the attention of the police.

Defendant's surrender of the handgun was also sufficiently incriminating to give rise to Fifth Amendment protection. The order compelling defendant to turn over his weapons was issued in the course of a felony prosecution, without a grant of immunity or amnesty. Indeed, by the time defendant produced the weapon, he had provided the police with proof of virtually every element of the offense of criminal possession of a weapon. Given that the act of production involved the commission of a crime in

4. There was no connection between the ex-wife and the domestic violence incident in Delaware County, which involved a different person. It appears that the authorities would have had no reason to interview defendant's ex-wife concerning their investigation of the Delaware County charges.

the presence of the police, it can hardly be argued that the conduct was unlikely to result in criminal prosecution.

Both elements of the act of production doctrine having been met, defendant's surrender of the unlicensed handgun was privileged under the Fifth Amendment and suppression of the evidence was therefore warranted in the weapon possession prosecution. Because the People have proffered no evidence that law enforcement authorities would have learned of defendant's possession of the revolver through independent means, or that they could have connected defendant to the handgun with proof unrelated to the act of production, the suppression of this evidence necessitated dismissal of the accusatory instrument.

Accordingly, the order of County Court should be reversed, defendant's motion to suppress granted and the information dismissed.

Chief Judge KAYE and Judges CIPARICK, READ, SMITH and PIGOTT concur; Judge JONES taking no part.

Order reversed, etc.