OPINION OF THE COURT
Anthony A. Scarping, Jr., S.
In these three probate proceedings in the estate of Brooke *402 Russell Aster, (1) Anthony D. Marshall moves for an order protecting him from the production of documents; (2) the New York Public Library and the Metropolitan Museum of Art, two charitable beneficiaries under the decedent’s wills, oppose the motion; (3) Robert Morgenthau, the District Attorney of New York County, takes no position with respect to the motion but submits an affirmation to clarify and address certain issues; (4) JPMorgan Chase Bank, N.A. and Howard A. Levine, Esq., the co-temporary administrators, oppose that portion of Mr. Marshall’s motion which seeks an order protecting him from providing SCPA 1404 discovery to them; and (5) Andrew Cuomo, the Attorney General of the State of New York, opposes the motion and cross-moves for an order compelling Mr. Marshall to produce document discovery. The motions are decided as set forth below.
The facts have been fully set forth in the court’s prior decisions. The facts applicable to these motions are as follows:
By order dated October 17, 2007, this court established a schedule for the taking of pre-objection SCPA 1404 discovery. The order included dates for the exchange of documents, with all demands for discovery and inspection to be served by November 2, 2007, and for the depositions of 11 witnesses. Demands were served on Mr. Marshall by the library and the museum and various other charitable beneficiaries (collectively, the charities), the Attorney General and Chase.
On November 27, 2007, an indictment was unsealed against Mr. Marshall and Francis X. Morrissey, Esq. (the drafter of the third codicil to the 2002 instrument). The indictment alleges acts in furtherance of various crimes which took place from December 1, 2001 to on or about September 11, 2007. It charges Mr. Marshall with, among other things, crimes concerning the offering of the second codicil for probate, and Mr. Morrissey’s drafting of the third codicil. At the arraignment, Mr. Marshall pleaded “not guilty.”
By notice of motion dated December 10, 2007, Mr. Marshall moved for a partial stay and a protective order to suspend his obligations to respond to discovery demands until such time as the criminal proceeding was terminated. By notice of motion dated December 21, 2007, the District Attorney moved to intervene and, upon intervention, to stay all proceedings until the criminal charges against Messrs. Marshall and Morrissey were resolved. By notice of motion dated December 21, 2007, the Attorney General moved for a stay of all proceedings, or in *403 the alternative, a stay of all discovery except document discovery and setting a date for a conference 90 days after the issuance of the stay.
On January 4, 2008, the court issued a decision and order which, among other things, required the parties to complete document discovery as set forth in paragraph one of that order by January 28, 2008, and Mr. Marshall to make a motion for a protective order returnable on or before February 13, 2008. (That date ultimately was extended.)
On February 26, 2008, Mr. Marshall served written responses to the three sets of demands for document discovery. To the demands of the Attorney General and the charities, Mr. Marshall responded, among other things, that he would not produce, identify or acknowledge the existence of any of the responsive documents, invoking his Fifth Amendment privilege against self-incrimination. To the demands of Chase, Marshall responded, among other things, that Chase had no standing to participate in the SCPA 1404 discovery, and if the court found that Chase did have standing, then he asserted his Fifth Amendment privilege against production.
By notice of motion dated March 7, 2007, Mr. Marshall moved for a protective order against the production of documents requested of him by the Attorney General and the charities asserting his privilege against self-incrimination pursuant to the Fifth Amendment of the United States Constitution and article I (§ 6) of the New York State Constitution. Mr. Marshall also moved for a protective order against the production of documents requested by Chase on the grounds that it lacked standing to participate in SCPA 1404 discovery.
In support of his motion, Mr. Marshall argues, among other things, that he need not respond to the document demands because the “act of production” may convey information which could potentially be used against him in the criminal proceeding and that he should neither be compelled to serve a privilege log because the disclosure of the log could reveal admissions concerning the documents nor have to submit to an “in camera” review.
Mr. Marshall also argues that Chase lacks standing to participate in SCPA 1404 discovery because the bank cannot satisfy the prerequisite of having a pecuniary interest in Mrs. Astor’s testamentary instruments.
In response, the library and the museum argue that the motion is overly broad because it seeks protection of every docu *404 ment in Mr. Marshall’s possession; that the “act of production” doctrine is applied on a document by document basis to be determined by the court’s in camera review; and as a protection to preserve the privilege, that the parties to these proceedings should receive the documents as Mr. Marshall’s agents. In reply to the arguments made by the library and the museum, Mr. Marshall states that the procedural safeguards suggested would violate his constitutional rights.
In opposition to Mr. Marshall’s motion, Chase and Levine argue, among other things, that they should be permitted to participate in the discovery process because their involvement will assist the court in the determination of the validity of the propounded instruments. In reply, Mr. Marshall argues that the role of the co-temporary administrators should be neutral and is not to assist the court, and that allowing them to participate would circumvent the in terrorem clause of the decedent’s will. With respect to the standing issue, the library and the museum argue that Chase and Levine should be permitted to participate because Chase’s knowledge will conserve estate resources.
The District Attorney states, among other things, that he takes no position as to the motion, that he has no agreement with any of the parties to share the results of discovery in these proceedings; that he has no desire to participate in this proceeding except to the extent that any of the actions might impact the criminal proceeding; and that the court should reject the proposed procedural safeguards suggested by the library and the museum and order an in camera review of the documents.
The Attorney General cross-moves for an order directing Mr. Marshall to produce those documents to which no Fifth Amendment privilege has attached and provide the remaining documents to the court for an in camera review for determinations as to privilege. The Attorney General argues, among other things, that there is no constitutional protection for the documents sought which Mr. Marshall was required to prepare or which are from a corporation, limited liability company or partnership. In support of his cross motion, the Attorney General argues that Mr. Marshall’s general objections to his document demands are inadequate and that he should be required to produce the requested documents without an additional motion.
As a preliminary matter, documents should be produced unless the production would be violative of a constitutional right or a privilege or would be palpably improper (see Hertz Corp. v *405 Avis, Inc., 106 AD2d 246 [1985]). Here, Mr. Marshall is invoking the privilege against self-incrimination based on the content of the documents he has in his possession and on the potential ramifications from the act of production of these documents. The burden of establishing that the documents sought are protected by a privilege rests on the individual seeking to invoke it (see Anonymous v High School for Envtl. Studies, 32 AD3d 353 [2006]).
The Fifth Amendment to the United States Constitution provides that “[n]o person . . . shall be compelled in any criminal case to be a witness against himself.” The guarantee must be construed broadly to insure the individual’s protection (see Estate of Fisher v C.I.R., 905 F2d 645 [1990]). The New York State Constitution also provides protection against compelled self-incrimination (art I, § 6). However, contrary to Mr. Marshall’s argument, there is no basis to construe the protection against self-incrimination granted under the federal and state constitutions differently (see Matter of Nassau County Grand Jury Subpoena Duces Tecum Dated June 24, 2003, 4 NY3d 665 [2005]). The privilege may be asserted in any civil, criminal or administrative proceeding if compelled testimony might lead to future criminal proceedings (see Kastigar v United States, 406 US 441, reh denied 408 US 931 [1972]; In re Schick, 215 BR 4 [1997]).
The Fifth Amendment protects a person against being incriminated by his own compelled testimonial communications (see Fisher v United States, 425 US 391 [1976]). The privilege does not extend to the compelled production of incriminating documents unless the individual asserting the privilege was compelled to create the document (see Fisher v United States, supra; see also People v Slavin, 1 NY3d 392, cert denied 543 US 818 [2004], citing United States v Hubbell, 530 US 27 [2000]). However, while the contents of documents generally are not protected by the privilege, the act of producing the documents may be protected when it is found to have communicative aspects (see Fisher v United States, 425 US at 410). If the act of production doctrine applies, an individual may rely on the protection of the Fifth Amendment to withhold both personal and corporate documents in his possession (In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992, 1 F3d 87 [1993], cert denied sub nom. Doe v United States, 510 US 1091 [1994]).
*406 The Fisher Court wrote that the “[c]ompIiance with [a] subpoena[*] [for production of documents] tacitly concedes the existence of the papers demanded and their possession or control [and] . . . indicate[s] the [individual’s] belief that the papers are those described in the subpoena” and stated that these facts reveal the elements of compulsion (see Fisher v United States at 410). However, the Court stated that the element of compulsion alone was insufficient and that for a document to be protected, the act of production also had to be both testimonial and incriminating (see Fisher v United States, supra). The analysis of whether the doctrine applies is made completely without reference to the content of the document (see United States v Doe, 465 US 605 [1984]).
Evidence is testimonial when it reveals the defendant’s subjective knowledge or thought processes or when it expresses the contents of the defendant’s mind (People v Havrish, 8 NY3d 389 [2007], cert denied 552 US —, 128 S Ct 207 [2007], citing Doe v United States, 487 US 201 [1988]). The turnover of evidence may be testimonial if it communicates (explicitly or implicitly) statements of fact such as the existence of the documents in the individual’s possession or control (which was not known to the authorities or could not have been discovered through independent means) and their authenticity (see United States v Hubbell, supra; see also In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992, supra; People v Havrish, supra).
In contrast, if it was a “foregone conclusion” that the documents could be found in the possession of the individual and the turnover thereof adds little or nothing to the government’s information by concession of its existence in the hands of the individual, then the act of production is not sufficiently testimonial *407 to implicate the Fifth Amendment (see People v Havrish at 395, citing Fisher v United States at 411). When the government can authenticate the documents without relying on any act by the individual, then his production does not implicate the Fifth Amendment (see Fisher v United States at 411; see also Federal Sav. & Loan Ins. Corp. v Hardee, 686 F Supp 885 [1988]).
The act of production is incriminating if the subjective information the government will obtain through the act of production poses a realistic threat of incrimination (see People v Havrish at 395, citing Fisher v United States at 411). Again, the fact that the documents contain incriminating information does not implicate the privilege (see Fisher v United States at 409-410). Depending on the facts of the case, the act of production may be found incriminating because the documents exist, are in the possession of the individual or are those described in the subpoena (see Fisher v United States at 410).
The Fisher Court concluded by stating that the determination of the issues of whether production is both testimonial and incriminating depends on the facts and circumstances of the particular case. In Fisher, the Court ultimately found that compelling the production of the taxpayer’s accountant’s workpapers pursuant to a subpoena did not involve testimonial self-incrimination and that the turnover issue was not a “question . . . of testimony but of surrender” (see Fisher v United States at 411, quoting In re Harris, 221 US 274, 279 [1911]).
As noted in Fisher, above, the party asserting the privilege cannot decide for himself whether or not the privilege applies (see Hoffman v United States, 341 US 479 [1951]). The decision as to whether to engage in an in camera review rests in the sound discretion of the trial court (United States v Zolin, 491 US 554 [1989]). Once an in camera review is ordered, the privilege log to be submitted along with the documents must contain enough information to enable the court to determine the application of the privilege and must include a written explanation about each document as to why production is both testimonial and incriminating (Matter of Schick, supra). As long as sufficient reasons are given to permit the court to independently determine that a real danger exists, the privilege will be upheld (Matter of Schick, supra).
Based on the above, an in camera review is ordered. By November 17, 2008, Mr. Marshall must turn over to the court only, all documents responsive to the discovery notices over which he asserts any privilege and a privilege log which complies *408 with CPLR 3122 (b) and which states as to the privilege against self-incrimination as to each document, specific facts as to why the production is both testimonial and incriminating and as to each other privilege as to each document, why that privilege is claimed. Thereafter, the court will render a decision on the production of the documents against which the privilege against self-incrimination has been asserted.
With respect to those documents over which the privilege against self-incrimination and other privileges were asserted but which the court finds the privilege against self-incrimination unsupported, the court will order the production and service of a privilege log with respect to these documents only on all parties (exclusive of the District Attorney). Upon receipt of the privilege log, the Attorney General may renew his motion to compel document discovery.
The court rejects Mr. Marshall’s argument that an in camera review is unnecessary because the “incriminating nature of a response to the discovery demands is apparent on the face of the demands, when considered in light of the relevant evidence.” Mr. Marshall relies on United States v Hoffman (supra), which preceded Fisher, and which concerned the application of the Fifth Amendment privilege against self-incrimination to oral testimony and not to the production of documents. To this point, Mr. Marshall has not satisfied his burden in accordance with the case law construing the act of production doctrine, and the in camera review of the documents along with the submission of the privilege log will allow him the opportunity to try to do so.
Turning to that portion of Mr. Marshall’s motion which seeks a protective order against Chase’s participation in the SCPA 1404 discovery, SCPA 1404 (4) states in pertinent part that
“[a]ny party to the proceeding, before or after the filing of objections to the probate of the will, may examine any or all of the attesting witnesses . . . There shall be made available to the party conducting such examination, all rights granted under article 31 of the civil practice law and rules with respect to document discovery.”
While the statute does not specifically state, courts construing the probate provisions of the SCPA have found that because discovery must relate to matters which may be the basis of objections, the SCPA 1404 examining party must have standing to file objections under SCPA 1410 (see Matter of Peckolick, 167 Misc 2d 597 [1996]).
*409 SCPA 1410 requires a party filing objections to an instrument to be adversely affected by its admission (SCPA 1410). Adverse interest has been construed to mean pecuniary harm (see Matter of Hall, 12 AD3d 511 [2004]). However, a replaced fiduciary whose only financial interest would be in the commissions to which he would have been entitled if his appointment were not revoked by a later instrument may not file objections unless authorized by the court for good cause shown (SCPA 1410; see also Matter of Silverman, 91 Misc 2d 125 [1977]).
SCPA 1410 was amended to add the good cause requirement to prevent a replaced fiduciary from creating a will contest where he was motivated by nothing more than capturing his lost commissions or preventing a settlement among the natural objects of the testator’s bounty (see Matter of Marks, 142 Misc 2d 733 [1989]). The court has discretion in determining what constitutes good cause (see Matter of Baldwin, 296 AD2d 744 [2002], lv denied 99 NY2d 502 [2002]).
Like the determination required for standing to file objections, some courts have required a fiduciary named in a prior instrument to demonstrate the same good cause as a prerequisite to participation in SCPA 1404 discovery (see Matter of Shamroth, NYLJ, Nov. 19, 1998, at 36, col 6). Other courts have permitted the replaced fiduciary to participate in the discovery without a demonstration of good cause where other parties have filed objections (see Matter of Lerner, 72 Misc 2d 592 [1973]).
Good cause has been found where the replaced fiduciary demonstrates that he can assist the court in seeing that the wishes of the testator will be honored (see Matter of Marks, supra) or where a fiduciary had a special relationship with the decedent and unique knowledge of the facts to be brought before the court (see Matter of Silverman, supra; Matter of Molnar, 76 Misc 2d 126 [1973]), or where there were allegations of fraud, undue influence or lack of testamentary capacity are supported by facts which indicate that there may be a problem with the propounded instrument (see Matter of Doyle, NYLJ, Feb. 14, 1990, at 22, col 5).
For example, in Matter of Silverman (supra), the court found good cause based on allegations that the assets of the decedent were misappropriated during the last days of his life when he was in a weakened state and permitted the fiduciaries of the prior will to file objections, noting that they might be able to aid the court in its inquiry as to the genuineness of the later will.
Similarly, in Matter of Molnar (supra), good cause was found where the fiduciary was the decedent’s attorney and friend for *410 many years and potentially was in a position to assist the court in its statutory duty to inquire into the facts and be satisfied with the genuineness of the will and the validity of its execution and because the relationship would provide a basis for more effective cross-examination of witnesses and the production of relevant evidence.
In Matter of Peckolick (supra), good cause was not found where the propounded instrument and the prior instrument were consistent as to estate plan and identity of beneficiaries and where the potential contest would serve no purpose other than an opportunity for the replaced fiduciary to get the commissions he thought he would be due (see also Matter of Lachman, 100 Misc 2d 21 [1979] [no objections filed by any of the parties to the proceeding including Attorney General; court would not allow attorney/nominated fiduciary in prior will to be the cause of a probate contest; no good cause demonstrated as papers lacked any allegations of fact which would support probate objections]).
As a preliminary matter, it is undisputed that Chase has no pecuniary interest which would permit it standing to file objections. However, as stated in Matter of Silverman (at 126), “[t]his case is somewhat different, and the general rule is not applicable.” Here, there are no nominated executors available under Mrs. Aster’s earlier instruments who are in a position to petition to conduct SCPA 1404 examinations or to file objections. Those named individuals (Messrs. Marshall and Henry Christensen, III) were required to renounce their appointments as part of a settlement agreement before the Supreme Court, New York County (Stackhouse, J.) in the guardianship proceeding. Furthermore, although Chase and Levine are co-temporary administrators and not fiduciaries under a prior will, they are still fiduciaries (see Matter of Marks, supra), and Chase is the proponent of Mrs. Astor’s 1997 instruments.
In Matter of Marks (at 735-736), the court found that trustees of a foundation named in a prior will had good cause to object to the propounded instrument because they had the same fiduciary responsibilities as an executor, testamentary trustee or guardian which included the obligation to protect “the testator’s intention as expressed in a valid will” and found that they were fiduciaries within the meaning of SCPA 1410. The court based its determination on the fact that “special circumstances exist[ed] which require[d] the fullest inquiry” because the will was executed while the decedent was in the hospital in a *411 weakened state, six days before his death, and the fiduciaries under the propounded instrument were the drafter and the testator’s nurse (see Matter of Marks at 737).
Applying the case law to the facts in the record before this court, Chase has demonstrated good cause to permit it to participate in the SCPA 1404 discovery for the following reasons: (1) The allegations in these proceedings concern execution, testamentary capacity, fraud and undue influence. (2) As reflected in her prior wills, Mrs. Astor had a strong charitable intent. As a proponent of the 1997 instruments, Chase has an obligation to protect beneficiaries under those instruments which include dozens of charities. Some of these charities are not well endowed, and it might be impractical and difficult for them to be separately represented. The presence of Chase will assist in the preservation of the estate’s assets for the charities. (3) As in Matter of Doyle (supra), Chase has unique access to and knowledge of information that will benefit the estate from its role in the guardianship proceeding. It has been the custodian of voluminous records concerning Mrs. Astor and her assets and has administered her assets as property management guardian. And (4), unlike a replaced fiduciary, Chase as co-temporary administrator is not motivated by lost commissions but is already receiving commissions for its fiduciary function.
Based on all of the above, Chase having a role in the SCPA 1404 discovery would serve to reflect the spirit and the intent of the probate statutes. Therefore, that portion of the motion which seeks to deny the standing of the co-temporary administrators to participate in the SCPA 1404 discovery is denied.
At this juncture, and as discussed above, the Attorney General’s cross motion to compel the production of documents is denied without prejudice pending the resolution of the issue of the application of Mr. Marshall’s assertion of the Fifth Amendment privilege against self-incrimination.

 Although nearly all of the cases construing the “act of production” doctrine concern documents sought pursuant to a governmental subpoena (see United States v Doe, 465 US 605, 612 [1984] [“(a) government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect”]) either in the context of criminal, bankruptcy or tax proceedings, the doctrine has been applied in civil cases where documents were requested pursuant to a notice to produce (see New York State Natl. Org. for Women v Terry, 886 F2d 1339 [1989], cert denied 495 US 947 [1990] [applying act of production doctrine to a document request but determining that civil defendant was not protected by it in his status as custodian of corporation’s records]; ACLI Intl. Commodity Servs., Inc. v Banque Populaire Suisse, 110 FRD 278 [1986] [applying act of production doctrine to court order granting motion to compel compliance with a discovery request in civil case]; see also OSRecovery, Inc. v One Groupe Intl., Inc., 262 F Supp 2d 302 [2003], reconsideration denied 2003 WL 21285539, 2003 US Dist LEXIS 9302 [2003] [same]).