United States v. Guarino

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of September, two thousand fourteen.

PRESENT:  GUIDO CALABRESI,
          REENA RAGGI,
          DENNY CHIN,
                    *Circuit Judges.*
------------------------------------------------------------------------
UNITED STATES OF AMERICA,
                    *Appellant*,


          v.                                        No. 13-3731-cr

CESARE GUARINO,
                    *Defendant-Appellee.*
------------------------------------------------------------------------
APPEARING FOR APPELLANT:     PAUL D. SILVER (Kevin P. Dooley, *on the brief*), Assistant United States Attorneys, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Albany, New York.

APPEARING FOR APPELLEE:      JAMES P. EGAN (James F. Greenwald, Assistant Federal Public Defender, *on the brief*), Research & Writing Attorney, *for* Lisa Peebles, Federal Public Defender for the Northern District of New York, Syracuse, New York.

1

Appeal from an order of the United States District Court for the Northern District of New York (Thomas J. McAvoy, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order entered on September 23, 2013, is AFFIRMED and the case is REMANDED for further proceedings.

The United States appeals from an order suppressing evidence seized in violation of the Fourth Amendment, arguing that the district court erred in failing to recognize that the firearm and silencers seized were admissible under the theory of inevitable discovery.   In reviewing the district court's findings of historical fact for clear error and its application of the inevitable discovery doctrine <u>de novo</u>, <u>see</u> <u>United States v. Stokes</u>, 733 F.3d 438, 443 n.6 (2d Cir. 2013), we assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm and remand.

Although evidence seized in violation of the Fourth Amendment is ordinarily inadmissible at trial, an exception applies "if the government can prove that the evidence would have been obtained inevitably without the constitutional violation." <u>United States v. Heath</u>, 455 F.3d 52, 55 (2d Cir. 2006) (internal quotation marks omitted).   To demonstrate inevitable discovery, the government must prove by a preponderance of the evidence that, "viewing affairs as they existed at the instant before the unlawful search occurred, . . . a court can find, with a high level of confidence, that each of the

2

contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor." United States v. Stokes, 733 F.3d at 444 (internal quotation marks omitted); see id. ("Under the inevitable discovery exception, unlawfully seized evidence is admissible if there is no doubt that the police would have lawfully discovered the evidence later." (emphasis in original) (internal quotation marks omitted)).

Here, the government does not contest that the firearm and silencers were seized unlawfully. Nevertheless, it proffers various theories to support inevitable lawful discovery: (1) defendant would have voluntarily surrendered the firearm as a condition of a court order of protection; or (2) if defendant did not comply with the surrender order, police would have seized the firearm pursuant to a search warrant based on (a) such non-compliance or (b) probable cause that evidence of defendant's criminal conduct would be found in his locked room. We are not persuaded.

First, in the context of an inevitable discovery inquiry, assumptions about the conduct of non-law enforcement—here, the defendant—are "inherently speculative," thus generally precluding the high degree of confidence required to afford an exception to suppression. Id. at 447 (reversing inevitable discovery conclusion that relied upon assessment of "actions that might have been taken by third parties—[defendant], [defendant's associate], or motel staff—not acting at the behest of the police"). Indeed, the requisite confidence in defendant's hypothesized compliance with the surrender

3

provision of a protective order is further undermined here by his history of volatile action and potential mental illness.

In nevertheless maintaining that Guarino's compliance with the firearm surrender provision of a protective order was inevitable, the government points to his earlier "voluntary" disclosure of the combination to his gun safe. The district court was not persuaded nor are we. When defendant disclosed the safe combination, he was in custody and had not been advised of his rights. Moreover, he disclosed the combination knowing that police had already entered his bedroom (the Fourth Amendment violation) and in response to an officer's questionable assertion of authority to "seize" any firearms in the safe pursuant to the order of protection. G.A. 128. While the district court did not find these circumstances to evidence coercion, the issue before us is not whether they manifest a constitutional violation but whether they leave us with "no doubt" that, even without the unlawful entry into defendant's room and with a correct statement as to his obligations under the protective order and the consequences of non-compliance, defendant would have surrendered his guns. The circumstances of the combination disclosure do not support the requisite high degree of confidence. Cf. United States v. Moreno, 701 F.3d 64, 77 (2d Cir. 2012) (stating that handcuffs, absence of Miranda warnings, and knowledge of right to refuse are factors in voluntariness analysis); United States v. Vasquez, 638 F.2d 507, 528–29 (2d Cir. 1980) (implying that false claim of ability to obtain warrant can negate voluntariness of consent).

Second, we also do not have the requisite "high level of confidence" that, if defendant had not complied with the surrender order, police inevitably would have seized firearms pursuant to a search warrant based on such non-compliance. Violation of a surrender order appears to expose a defendant to criminal charges. See People v. Havrish, 8 N.Y.3d 389, 392, 834 N.Y.S.2d 681 (2007) (stating that had defendant not surrendered weapons pursuant to order of protection, "he could have been prosecuted for criminal contempt"). Nevertheless, the government points us to no authority that a search warrant inevitably issues, cf. United States v. Cabassa, 62 F.3d 470, 473–74 (2d Cir. 1995) (stating that even where probable cause exists, if "there is some room for disagreement . . . [t]here is thus a residual possibility" that warrant would not have issued), much less issues so promptly as to preclude removal of sought items by third parties, see People v. Degiorgio, 36 A.D.3d 1007, 1007, 827 N.Y.S.2d 342, 343 (3d Dep't 2007) (stating that search warrant for guns was obtained after defendant not in custody repeatedly refused to comply with surrender provision); see also United States v. Stokes, 733 F.3d at 447 (rejecting inevitable discovery, in part, because contraband possibly would have been moved by third party prior to lawful seizure).[1] Accordingly, we do not conclude that the evidence inevitably would have been seized lawfully on this basis.

---

[1] In this respect we note that although defendant's mother originally requested that police remove her son's firearms from her house, she subsequently testified in his defense at the suppression hearing, making it difficult to have a high degree of confidence that she would not have removed the firearms before a non-compliance warrant was executed.

Third, even assuming that the police had probable cause to search Guarino's bedroom for evidence of his criminal mischief and stalking offenses, we cannot determine with a high level of confidence that police would have sought a warrant on such grounds. Cf. United States v. Heath, 455 F.3d at 55 (remanding for further factual findings as to whether officer would have arrested suspect even though probable cause likely existed). Police had not begun to apply for such a warrant at the time of the illegal search. See United States v. Cabassa, 62 F.3d at 473 (instructing that where inevitable discovery claim is "based on expected issuance of a warrant, the extent to which the warrant process has been completed" at time of unlawful search "is of great importance"). Rather, the single court order police intended to secure at that time was an order of protection with a firearm surrender provision. Compliance with that order, however, would have, at least arguably, precluded defendant's prosecution for unlawful firearms possession under New York law. See N.Y. Penal Law § 265.20(a)(1)(f) (stating that New York unlawful firearms possession statutes do not apply to persons who "voluntarily surrender[]" firearm to police); N.Y. Crim. Proc. Law § 530.14(5)(b) (providing that "prompt surrender of one or more firearms pursuant to a court order issued pursuant to this section [authorizing protective orders' surrender provisions] shall be considered a voluntary surrender for purposes of [N.Y. Penal Law § 265.20(a)(1)(f)]"). These circumstances do not afford a high degree of confidence that police intended or inevitably would have secured a search warrant based on probable cause that they would find evidence of the charged state mischief and stalking offenses.

6

Indeed, the government did not argue such a search and seizure theory before the district court, either in its initial opposition to defendant's motion to suppress or in its motion for clarification.

In sum, because we cannot conclude that there is "no doubt" that the police inevitably would have secured the illegally seized evidence by lawful means, the government's challenge fails on the merits.

We have considered the government's remaining arguments and conclude that they are without merit. We therefore AFFIRM the order of the district court and REMAND for further proceedings.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court