People v Manganiello (2025 NY Slip Op 03873)

People v Manganiello

2025 NY Slip Op 03873

Decided on June 27, 2025

Appellate Division, Fourth Department

Ogden, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 27, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., MONTOUR, OGDEN, DELCONTE, AND HANNAH, JJ.

23 KA 24-00964

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
SPENCER MANGANIELLO, DEFENDANT-APPELLANT. 

CERIO LAW OFFICES, PLLC, SYRACUSE (SHAUN M. CHASE OF COUNSEL), FOR DEFENDANT-APPELLANT. 
ANTHONY J. DIMARTINO, JR., DISTRICT ATTORNEY, OSWEGO (AMY L. HALLENBECK OF COUNSEL), FOR RESPONDENT. 

Ogden, J.
 Appeal from a judgment of the Oswego County Court (Armen J. Nazarian, J.), rendered January 8, 2024. The judgment convicted defendant, upon his plea of guilty, of possessing a sexual performance by a child. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, the plea is vacated, that part of defendant's motion seeking a determination that defendant's Fifth Amendment right against self-incrimination was violated is granted, and the matter is remitted to Oswego County Court for further proceedings in accordance with the following opinion.
Opinion by Ogden, J.: Defendant appeals from a judgment convicting him, upon a guilty plea, of possessing a sexual performance by a child (Penal Law § 263.16). He contends, inter alia, that the search warrant, the execution of which uncovered over 100 sexually explicit videos involving children on defendant's cell phone, violated his right against self-incrimination under the Fifth Amendment of the United States Constitution because, upon its execution, defendant was compelled to provide his biometric data to unlock the cell phone. Under the circumstances of this case, we agree with defendant that the execution of the search warrant violated his right against self-incrimination under the Fifth Amendment. In light of our conclusion, we reverse the judgment, vacate the plea, grant defendant's motion in part, and remit the matter to County Court for further proceedings.
 I

In 2022, the Oswego County Sheriff's Department received tips from Google LLC (Google) that child sexual abuse material had been uploaded to its servers from a Google account accessed from an internet service account located at a specific street address in Oswego. In response to a search warrant, Google provided investigators with additional information in regard to the Google account, including emails for a Facebook profile with the name "Mango Spenciello" and several "selfie" photos from the account's Google Drive. Through their investigation, the Sheriff's Department eventually concluded that defendant lived, along with two other individuals, at the street address where the Google account had been accessed and matched the person depicted in the Google Drive photos.
In February 2023, investigators with the Sheriff's Department applied for a warrant authorizing the search of defendant and items in his possession, as well as his apartment and any computers and electronic devices that may be located there. Investigators stated, in the search warrant application, that "it will likely be necessary to press the finger(s) of the user(s) of the device(s) found during the search to the biometric sensor, or make the user(s)' face visible to the scanner, in an attempt to unlock the device for the purpose of executing the search." County Court signed the search warrant, which stated, in relevant part, that
"[e]xecuting police officers may, if necessary, press the fingers or capture a facial image of [defendant] or any person located within the premises for the purpose of attempting to unlock any computer or electronic device secured via a biometric lock to search and examine the contents therein as requested by this search warrant application" (emphasis omitted).
The Sheriff's Department executed the search warrant on March 2, 2023. During the execution of the warrant, an investigator informed defendant, inter alia, that all electronic devices were to be secured and directed defendant to hand over his cell phone. When that investigator attempted to grab the cell phone, defendant "pulled away," but the investigator "grabbed [defendant] by the wrist, took the phone and placed his hands behind his back." Defendant was thereafter handcuffed and placed in the back of a police vehicle by another investigator. Defendant was then told that the warrant required him to unlock his cell phone, and defendant unlocked the cell phone by placing the tip of one of his fingers on the phone, which unlocked the device. The Sheriff's Department found over 100 sexually explicit videos involving children on defendant's phone in a folder labeled "child porn" as well as artificial intelligence-generated sexually explicit images of children.
Defendant was thereafter charged by superior court information with four counts of promoting a sexual performance by a child (Penal Law § 263.15) and one count of possessing a sexual performance by a child (§ 263.16). Defendant moved to suppress all evidence recovered pursuant to the search warrant, alleging violations of his Fourth and Fifth Amendment rights. Defendant asserted, as relevant here, that, insofar as the search warrant compelled him to provide his biometric data to unlock his electronic devices—or, alternatively, authorized police officers "to forcefully do the same"—his Fifth Amendment right against self-incrimination was violated. He specifically contended that the act of using a fingerprint to open a device is testimonial for Fifth Amendment purposes. The People responded that "defendant's act of unlocking the phone using his fingerprint" was not conclusive proof that he owned the phone but was merely "additional evidence" thereof. The People also asserted that defendant voluntarily unlocked the cell phone using his fingerprint.
The court denied defendant's motion, concluding that the search warrant did not violate his rights under the Fourth or Fifth Amendments. Defendant pleaded guilty to one count of possessing a sexual performance by a child and was sentenced to 10 years' probation.
II

The Fifth Amendment provides, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against [themselves]" (US Const 5th Amend). For a defendant to invoke the Fifth Amendment privilege, the communication at issue must be: (1) compelled; (2) incriminating; and (3) testimonial (see United States v Hubbell, 530 US 27, 34-38 [2000]; People v Havrish, 8 NY3d 389, 392 [2007], cert denied 552 US 886 [2007]).
Critical to our analysis here, "[t]estimonial communications are those that, 'explicitly or implicitly, relate a factual assertion or disclose information' " (United States v Payne, 99 F4th 495, 508 [9th Cir 2024], cert denied — US —, 145 S Ct 605 [2024], quoting Doe v United States, 487 US 201, 210 [1988]). The court's "inquiry is contextual" (United States v Brown, 125 F4th 1186, 1202 [DC Cir 2025]).
Two different lines of cases are implicated in the pertinent Fifth Amendment analysis: (1) the physical trait cases (where compelled physical acts, such as standing in a lineup or providing a handwriting exemplar, are not testimonial); and (2) the act of production doctrine cases (where purely physical acts can be testimonial when the act implicitly communicates the existence, control, or authenticity of evidence) (see Brown, 125 F4th at 1202-1203; Payne, 99 F4th at 508-510).
Under the physical trait case law, physical acts are not testimonial if they "do not involve the testimonial capacities of the accused and instead only compel an individual to provide law enforcement with access to an immutable physical characteristic" (Payne, 99 F4th at 509; see United States v Wade, 388 US 218, 222-223 [1967]). Testimonial capacities are not implicated when one acts merely as a donor (see Schmerber v California, 384 US 757, 765 [1966]). As an example, "[a] blood draw reveals the blood-alcohol content of an individual only when [*2]chemically analyzed" (Brown, 125 F4th at 1203 [emphasis added]). Indeed, the defendant's "participation, except as a donor, [is] irrelevant to the results of the test" (Schmerber, 384 US at 765). However, "[s]ome displays of physical traits can be testimonial" (Brown, 125 F4th at 1202). For example, "lie detector tests 'may actually be directed to eliciting responses which are essentially testimonial' " (id., quoting Schmerber, 384 US at 764).
Under the act of production doctrine, "a purely physical act may nonetheless be testimonial because of what it communicates 'wholly aside from the contents' of the thing produced" (Payne, 99 F4th at 509, quoting Fisher v United States, 425 US 391, 410 [1976]). The physical act of production will be considered to have a testimonial aspect if it relates information about the existence of, control over, or authenticity of the potential evidence (see Hubbell, 530 US at 37; Doe, 487 US at 215-216; Payne, 99 F4th at 510).
Recently, the District of Columbia Circuit concluded in United States v Brown that a defendant's compliance with an order to open his cell phone by placing a thumb on the phone was a testimonial communication. After reviewing the physical trait cases and the act of production cases, the Brown court concluded that both lines of cases supported that conclusion (see Brown, 125 F4th at 1203-1204). With respect to the physical trait cases, the Brown court reasoned that the defendant's physical act was distinguishable from submitting a fingerprint and "much closer to responding to a lie detector test or complying with a command to say a password" (id. at 1202), inasmuch as the act belonged to the category of "physical actions that require no additional information to communicate an incriminatory message" (id. at 1203). With respect to the act of production cases, the Brown court reasoned that the defendant's act, inter alia, "disclosed his control over the phone, [and] his knowledge of how to access it" (id. at 1204).
In United States v Payne, the Ninth Circuit concluded, on the facts presented before it, that "the use of [Payne's] thumb to unlock his phone was not a testimonial act and the Fifth Amendment does not apply" (99 F4th at 513). Notably, in Payne, ownership and control over the phone were not in dispute (see id. at 512-513). Payne had already acknowledged ownership of the phone and where it was located by telling a police officer that it "was in the driver's door panel and was green in color" (id. at 500 [internal quotation marks omitted]). Because of Payne's concessions, the Ninth Circuit in reaching its conclusion explained, "[t]he considerations regarding existence, control, and authentication . . . [were] absent or, at a minimum, significantly less compelling" (id. at 513).
III
Here, the court tacitly concluded that defendant's act of selecting one of his fingers and unlocking the cell phone with that finger, pursuant to the authority set forth in the search warrant, was not testimonial in nature and thus did not violate his Fifth Amendment right against self-incrimination. On appeal, the People do not dispute that the opening of the cell phone was compelled and incriminating. We are thus tasked with determining whether defendant's compelled opening of his cell phone, upon the warrant's execution, had a testimonial aspect sufficient to trigger Fifth Amendment protection.
As the courts concluded in Payne and Brown, we arrive, in this appeal, at the intersection of two lines of existing case law, the physical trait cases and the act of production cases. With respect to the physical trait cases, we conclude that defendant's "act of unlocking the phone represented the thoughts 'I know how to open the phone,' 'I have control over and access to this phone,' and 'the print of this specific finger is the password to this phone' " (Brown, 125 F4th at 1202). The biometric data defendant provided "directly announce[d] [defendant's] access to and control over the phone, as well as his mental knowledge of how to unlock the device" (id. at 1203 [emphasis added]). The act of production cases also support the conclusion that, upon execution of the warrant, defendant's compelled unlocking of his phone through biometric data was testimonial. We conclude that "in response to the command to unlock the phone, [defendant] opened it, [and] that act disclosed his control over the phone [and] his knowledge of how to access it" (id. at 1204; see In re Application for a Search Warrant, 236 F Supp 3d 1066, 1073 [ND Ill 2017]; see also United States v Doe, 465 US 605, 614 n 13 [1984]; People v Porter, 192 AD3d 222, 225 [2d Dept 2020]; cf. Payne, 99 F4th at 513). At a minimum, the authentication through biometric data implicitly communicated that the contents contained therein were in defendant's possession or control (see Hubbell, 530 US at 36; Porter, 192 AD3d [*3]at 225).
Here, as in Brown, the way in which the warrant was executed effectively required defendant to answer "a series of questions about ownership or control over the phone, including how it could be opened and by whom" (125 F4th at 1204). The facts in Payne, however, are distinguishable from the facts before us, because, as noted above, ownership and control over the phone were not in dispute (see 99 F4th at 512-513; see generally Hubbell, 530 US at 37). The facts of this case are more akin to Brown, where the defendant had not yet conceded the issue of ownership or control at the time of the warrant's execution (see 125 F4th at 1203-1204).
We therefore conclude that the execution of the search warrant violated defendant's right against self-incrimination under the Fifth Amendment. With respect to defendant's Fourth Amendment challenge to the search warrant, we conclude that the search warrant did not lack particularity (see People v Socciarelli, 203 AD3d 1556, 1558 [4th Dept 2022], lv denied 38 NY3d 1035 [2022]).
"Because the compelled opening of the cellphone [during the execution of the search warrant] was testimonial, both the message and any evidence obtained from that communication must be suppressed" (Brown, 125 F4th at 1204). We therefore remit to County Court to determine the extent to which evidence obtained as a result of defendant's testimonial communication must be suppressed (see id.).
In light of our conclusion, as well as the People's concession that defendant "placed his fingertip on the phone and unlocked it without the [i]nvestigator having to physically force him to do so," we do not address whether the express language of the search warrant permitting officers to "press the fingers of . . . [defendant]" on the phone would have violated the Fifth Amendment, and we note that our conclusion is limited to the facts before us. We have no occasion to address whether we would reach the same result as the Ninth Circuit did in Payne if we were presented with similar facts nor whether the New York Constitution would afford greater protection than the United States Constitution under those facts.
Entered: June 27, 2025
Ann Dillon Flynn
Clerk of the Court